**THE LAW OFFICES OF NEAL BRICKMAN, P.C.**
Neal Brickman, Esq. (NB0874)
Jason A. Stewart, Esq. (JS4602)
420 Lexington Avenue, Suite 2811
New York, New York 10170
Telephone: (212) 986-6840
*Special Litigation Counsel to Gregory M. Messer, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

EQUILIBRE BIOPHARMACEUTICALS CORP.,

        Debtor

---

GREGORY M. MESSER Soley in His Capacity as Chapter 7
Trustee of the Estate of Equilibre Biopharmaceuticals Corp.,

        Plaintiff,

    v.

SAMUEL WAKSAL, individually, as the former Chairperson,
Chief Executive Officer, and President of Equilibre
Biopharmaceuticals Corp. Chairperson, and Chief Executive
Officer and President of Graviton Bioscience Corporation,
Graviton Bioscience Holding Corporation, Graviton US Corp.
(USA), and Graviton Bioscience B.V, FRANCOIS
MAISONROUGE, RUI WU, PETER SIMON, GRAVITON
BIOSCIENCE CORPORATION, GRAVITON BIOSCIENCE
HOLDING CORPORATION, GRAVITON US CORP. (USA),
GRAVITON BIOSCIENCE B.V., BIHUA CHEN,

        Defendants.

Chapter 7

Case No.: 23-12099 (PB)

**COMPLAINT**

Adversary Proceeding No.

**COMPLAINT**

      COMES NOW The Law Offices of Neal Brickman, P.C. ("LONB"), as special litigation

counsel for Gregory M. Messer (the "Trustee"), as Chapter 7 Trustee (the "Trustee") of the Estate

(the "Estate") of Equilibre Biopharmaceuticals Corp. ("Equilibre," the "Debtor" or the

1

"Company"), and as and for his Complaint against Graviton Biosciene Corporation together with Graviton Bioscience Holding Corporation ("GBHC"), Graviton US Corp. (USA) ("GVUSA"), and Graviton Bioscience B.V. ("GVBV") ("Graviton"), Samuel Waksal ("Waksal"), Francois Masionrouge ("Maisonrouge"), Rui Wu ("Wu"), Peter Simon ("Simon"), and Bihua Chen ("Chen"), (collectively referred to as "Defendants"), states and alleges as follows:

## NATURE OF THE ACTION

1.     This action arises from Defendants' breach of fiduciary duties, negligent conversion of corporate assets, and the aiding and abetting of such misconduct. At its core, this case is about Defendants' inappropriate behavior, specifically, Waksal's grossly negligent and reckless conduct, which commenced during his tenure as Equilibre's Chief Executive Officer, President, Chairperson of the Board, and largest shareholder of Equilibre, and continued through, and during, his employment and positions as Graviton's Chief Executive Officer, President, Chairperson of the Board, and largest shareholder. As the single largest shareholder of Equilibre from its inception until its dissolution, the most senior executive of Equilibre, and Chair of its Board, Waksal owed the Company and stakeholders, duties of care, loyalty, and good faith. However, over the course of several years, he knowingly or recklessly breached each of these duties. At a minimum, he disregarded corporate governance rules or regulations which caused severe and irreparable harm to Equilibre as a going concern.

2.     Waksal's misconduct was actively aided and abetted by select members of Equilibre's management and Board of Directors, to wit, Maisonrouge, Wu, and Simon, who each deliberately shielded Waksal at the expense of the Company's financial stability and regulatory compliance. Waksal's actions were not isolated incidents, but part of a sustained pattern of reckless

disregard for legal, ethical, and corporate governance standards that individuals in similar positions are expected to uphold.

3.　　Among Waksal's most reckless acts was his disregard for statutory and regulatory requirements, and the safety and welfare of a severely ill child, when he and Wu, with Maisonrouge's and Simon's knowledge,  smuggled into the United States a veterinary medication that was unapproved for human consumption, and adulterated, distributed, prescribed and administered veterinary medication to a child, outside of approved protocols and without the Food and Drug Administration's ("FDA") authorization. This conduct came to light after an Equilibre Audit Committee's internal investigation into an employee's allegations that Waksal sexually harassed her, that he created a hostile work environment, and that he gave a child a mixture of an illegal substance with alcohol. These findings, in turn, led the Equilibre Board of Directors to self-report the occurrences to the FDA, all to the Company's financial detriment.

4.　　The Equilibre Board of Directors' investigation into Waksal's actions, in turn, revealed additional offensive and often unlawful acts committed by Waksal in his capacity as a director and officer of Equilibre.

5.　　After his forced resignation from Equilibre, Waksal, as Graviton's largest shareholder, continued to serve as Chairperson, Chief Executive Officer and President of Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp., and Graviton Bioscience B.V. Graviton, under Waksal's and Chen's oversight, then proceeded to convert Equilibre's trade secrets and funding opportunities for Graviton's benefit and to Equilibre's detriment.

6.　　Waksal's repeated breaches of his fiduciary duties, coupled with the conversion of Equilibre's financial assets and proprietary information—acts which the Defendant Board

Members Maisonrouge and Simon allowed and endorsed—directly contributed to Equilibre's financial collapse and eventual bankruptcy. Accordingly, this action seeks to recover damages resulting from Defendant's gross misconduct, including financial losses, reputational harm, and all other consequences stemming from his unlawful actions and for the harm caused by Graviton, Maisonrouge, Wu, and Simon, aiding and abetting Waksal's unlawful actions.

## JURISDICTION AND VENUE

7.      This adversary proceeding relates to the chapter 7 bankruptcy case captioned *In re Equilibre Biopharmaceuticals Corp.*, Case No. 23-12099 (PB), pending in the United States Bankruptcy Court for the Southern District of New York before the Honorable Philip Bentley, United States Bankruptcy Judge (the "Bankruptcy Court").

8.      The Bankruptcy Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 157(a) and (b) and 1334(b), and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

9.      The Trustee consents to the entry of final orders or judgments by the Bankruptcy Court with respect to all matters and claims raised by this Complaint.

10.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in a case under Title 11 of the United States Code (the "Bankruptcy Code") pending in this district.

## THE PARTIES

11.      Plaintiff is the Chapter 7 Trustee of the Debtor's bankruptcy estate.

12.      Plaintiff is authorized to file this action under Section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

13. Defendant Waksal is an individual who, at all relevant times, resided in the city, state, and county of New York.

14. Defendant Graviton Bioscience Corporation is a corporation organized and existing under and pursuant to the laws of the State of Delaware, with its principal place of business in the county of New York, New York.

15. Defendants Graviton Bioscience Holding Corporation and Graviton US Corp. are corporations organized and existing under and pursuant to the laws of the State of Delaware.

16. Defendant Graviton Bioscience B.V. is a company organized and existing under and pursuant to the laws of the Netherlands, which owns all of Graviton's intellectual property, and is a wholly owned subsidiary of Graviton Bioscience Corporation.

17. Defendant Maisonrouge is an individual who, at all relevant times, resided in the state of New York, was a member of the Board of Directors of Equilibre, was a member of Equilibre Board's Nominating and Governance, Compensation, and Audit sub-committees, chaired Equilibre's Compensation and Audit sub-committees, and was the chairperson of the Global Healthcare Group of Evercore Group L.L.C., one of Equilibre's investment banking agents.

18. Defendant Wu is an individual who, at all relevant times, was a Senior Vice President of Preclinical Research and CMC Operations for Equilibre where she served as head of the Equilibre's research and pre-clinical programs. Presently, Wu is a Senior Vice President, Head of Research & Pre-Clinical, Chief CMC Officer for Graviton.

19. Defendant Simon is an individual who, at all relevant times, was a member of the Board of Directors of Equilibre and a member of the Equilibre Board's Compensation and Audit sub-committees.

20.     Defendant Chen is an individual who, for most of the relevant time period, was Graviton's Chairperson of the Board of Directors or one of Graviton's Board Members.

**STATEMENT OF FACTS**

21.     Equilibre was founded in 2020 and was a biopharmaceutical company focused on developing novel treatments for neurological diseases.   Prior to its end, Equilibre had made significant progress in developing EQU-001, a novel anti-inflammatory, anti-seizure candidate for adjunctive therapy in focal seizures in patients with epilepsy.

22.     Prior to his involvement with Equilibre, Waksal was an allegedly internationally recognized leader in the biotechnology field, having ostensibly founded and led several pioneering drug and device companies. He purports to have established ImClone Systems, which redefined biotech innovation and was acquired by Eli Lilly & Company for $7 billion. He founded Meira GTx, a leader in gene therapy, and Kadmon Corporation, where he spearheaded the development of a selective ROCK2 inhibitor, leading to its $2 billion acquisition by Sanofi. (*See https://gravitoncorp.com/company*)

23.     Waksal's career also includes purported significant academic contributions. While not a medical doctor, Waksal claimed to hold esteemed positions at Mount Sinai School of Medicine and the National Cancer Institute, served as a visiting fellow at Weill Cornell Medical College, and an assistant professor at Tufts University School of Medicine. Additionally, Waksal claimed to be a senior scientist at the Tufts Cancer Research Center and to have held research positions at Stanford University Medical School, the Pasteur Institute in France, and the Weizmann Institute of Science in Israel. (*See https://gravitoncorp.com/company*).

24.     Waksal's reputation prior to his involvement with Equilibre also includes his 2002 and 2003 guilty pleas to securities fraud, conspiracy to obstruct justice and commit perjury, perjury,

obstruction of justice, bank fraud, conspiracy to commit wire fraud, and wire fraud. As the former CEO of ImClone Systems, he was sentenced in 2003 to an eighty-seven month term of imprisonment and was released from the United States Bureau of Prisons' custody in 2009.

25.     Equilibre, founded in 2020 and headquartered in New York City, was a biopharmaceutical company established to advance innovative and novel therapies and biopharmaceutical intellectual property with a focus on developing pharmaceutical treatments for neurological and other diseases. Equilibre had raised approximately $60,000,000.00 before Waksal's misconduct came to light, and its last valuation was $157,000,000.00.

26.     As Equilibre's largest shareholder, Waksal served as Equilibre's Chairperson, as a member of the Equilibre Board's Nominating and Governance, Compensation, and Science and Research sub-committees, chair of Equilibre's Science and Research sub-committees, Equilibre's Chief Executive Officer, and President from Equilibre's inception in October 2020 until his resignation in May 2022.

27.     Equilibre's early commercial success was attributed mainly to Waksal's proven ability to take private biotech companies to public offerings or high-value acquisitions.

28.     Equilibre's growth trajectory was demonstrated by its strategic alliances with multiple contract research organizations, renowned academic institutions, and clinical trial sites worldwide, as well as agreements with Charles River Laboratories, Inc. and Selvita, Inc.

29.     These vendor relationships provided the necessary infrastructure for Equilibre to pursue its intended purpose. Unfortunately, Equilibre's early progress and successes were interrupted by Waksal's wrongful conduct and forced resignation from Equilibre.

30.     In or around March 2022, Equilibre's Audit Committee initiated an independent investigation into serious allegations of misconduct by Waksal, including non-compliance with

FDA regulations, which posed significant risks to the Company, its directors, investors, employees, clinical trials, patients and reputation.

31.     Based on the severity of the allegations, the Audit Committee of Equilibre's Board retained the law firms of Cravath, Swaine & Moore LLP ("Cravath") and McDermott Will & Emery LLP ("MWE") to perform an investigation.

32.     The investigation uncovered substantial evidence of gross misconduct, including that Waksal illegally imported, distributed, prescribed and administered a non-FDA-approved veterinary drug to a child whose response he monitored to aid in developing a similar product for Equilibre.

33.     The investigation further found that Waksal placed a member of Simon's family on Equilibre's payroll as Waksal's part-time executive assistant without requiring her to work, and that because of Waksal's misconduct, Equilibre was required to remit significant funds to the employee whistleblower as a settlement and release of their claims.

34.     The investigation also found that Waksal attempted to obstruct the inquiry by, among other things, providing untruthful statements to the Cravath and MWE investigative attorneys, placing the mother of the child who he illegally gave the swine drug to on administrative leave from her paid position at Equilibre to prevent her from providing Cravath and MWE with statements concerning his conduct, and attempting to offer a witness $100,000 of company funds to deter her participation before she was scheduled to speak with investigators.

35.     The investigation concluded that Waksal had engaged in egregious misconduct, including that Waksal fostered a hostile work environment through abrasive conduct leading to employees feeling bullied and threatened, that he engaged in habitual sexual harassment, and that he violated multiple federal and state laws and regulations. The report found "more than sufficient

basis" to terminate his employment for cause. The Audit Committee concurred and in May 2022, formally recommended Waksal's termination to the Board.

36. Graviton was formed in 2020, and shared common ownership, directors, and officers with Equilibre, including Waksal, who served as President and Chief Executive Officer of Graviton. Both companies were established to develop biopharmaceutical intellectual property and drugs to address unmet medical needs.

37. Following his resignation from Equilibre, Waksal, with the assistance of the other Defendants transferred Equilibre's proprietary research, technology, and scientific advancements to Graviton. Moreover, Defendants diverted investors who were prepared to fund Equilibre toward Graviton, depriving Equilibre of the critical financial resources necessary for its continued operations. This resulted in the overnight shutdown of a Phase 2 clinical trial, abandoning approximately fifty patients who were responding to their treatment without regard.

38. Waksal's bad acts were known to, concealed by, and endorsed by the other Defendants. Their conduct facilitated Waksal's disregard for corporate governance and regulatory compliance, as well as his conversion.

39. As uncovered by the Cravath and MWE investigation, Waksal's bad acts were known to, concealed by, and endorsed by Wu.

40. Wu, together with Waksal, communicated directly with individuals in Colombia to acquire the veterinary medication and import it illegally into the United States. Wu mixed the veterinary medicine with other unapproved ingredients, which were shipped in interstate commerce and administered to a severely ill and epileptic child, outside of approved protocols and without FDA authorization. Wu memorialized these activities on Company servers.

41. Waksal's bad acts were also known to, concealed by, and endorsed by Maisonrouge. Maisonrouge was specifically made aware of the child dosing when he administered Waksal's veterinary concoction to his own dog, which, following that dosing, Maisonrouge woke up to find his dog dead the following day.

42. Defendants Maisonrouge and Simon, as directors of Equilibre, and Defendant Wu, as a senior vice president at Equilibre, all owed fiduciary duties to Equilibre.

43. Upon information and belief, the Defendants Maisonrouge, Wu and Simon failed to take any corrective measures and their intentional or unintentional negligent oversight materially assisted Waksal in his ability to breach his fiduciary duties and his later misconduct to convert intellectual property to Graviton and interfere with Equilibre's investment opportunities.

44. Upon information and belief, Defendant Waksal, with the knowing support and active concealment of Defendants Maisonrouge, Wu and Simon, orchestrated a sustained campaign of self-dealing, conversion, and obstruction to the detriment of Equilibre and its stakeholders. Among the most egregious acts, Waksal converted Equilibre's confidential research, pre-clinical data, and intellectual property for the benefit of Graviton, including by directing the unauthorized access of Equilibre's servers and the removal of Equilibre's name from vendor reports, which Graviton then falsely presented as its own corporate materials reviewed by its Board.

45. In parallel, Waksal engaged in illegal insider trading based on material, non-public information concerning an Equilibre client, which was improperly disclosed to him by Maisonrouge. This misconduct not only violated federal securities laws but also exposed Equilibre to heightened scrutiny from the U.S. Department of Justice ("DOJ"). Even as a federal grand jury investigation into Waksal commenced, Maisonrouge and Simon breached their fiduciary and legal

obligations by tipping off Waksal to government subpoenas served on the Company, in direct contravention of DOJ instructions.

46. Waksal conducted secret Board and committee meetings, where material decisions regarding his compensation were purportedly made without notice, quorum, or appropriate officer participation—acts that Maisonrouge and Simon knowingly permitted.[1]

47. Additionally, Defendants Maisonrouge and Simon knowingly approved contracts with a vendor selected by Waksal, despite internal objections, because its affiliated entity was paying Waksal a personal "consulting fee" of $60,000 per month.[2]

48. As a direct result of Waksal's gross negligence, breaches of fiduciary duty, and his repeated disregard for adhering to corporate governance rules and regulations, Equilibre suffered severe and irreparable financial harm.

49. Waksal—after his removal from Equilibre—continued to sabotage the Company by disparaging its senior management to potential investors to steer capital to Graviton.

50. Maisonrouge and Simon facilitated this effort by relaying defamatory statements to a key Equilibre investor.

51. Following Waksal's resignation from Equilibre, Equilibre was no longer able to procure the necessary funding to continue its operations and was forced to wind down and file for bankruptcy under Chapter 7 of the Bankruptcy Code as part of its winding up of affairs.

---

[1] Waksal also held Audit and Compensation Committee meetings without Equilibre's Chief Financial Officer or legal counsel present, undermining corporate governance and shareholder trust.

[2] Wu, while still employed by Equilibre as a senior vice president, transmitted proprietary information to Waksal at his request following his departure from the Company.

52.     Chen, in her role as Graviton's Chairperson of the Board of Directors or in her role as one of Graviton's Board Members, failed to exercise her oversight to prevent Graviton's unlawful conversion of Equilibre's intellectual property and funding opportunities.

## FIRST CLAIM FOR RELIEF

*(Breach of Fiduciary Duty Against Waksal)*

53.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "52" as if set forth fully herein.

54.     As a corporate officer and director of Equilibre, Waksal owed fiduciary duties of care, loyalty, and good faith to Equilibre and its stakeholders. He was required to act in the best interests of Equilibre, exercise reasonable diligence in corporate decision-making, and refrain from engaging in self-dealing and the misappropriation of corporate assets and opportunities.

55.     Waksal breached these duties through his continued violations of corporate governance policies and his flouting of regulatory requirements. This occurred repeatedly during his tenure, but the specific egregious violation which triggered an internal investigation and which is a breach of any officer or director's fiduciary duty *per se*, happened when it was disclosed that Waksal had imported, distributed, and administered a non-FDA-approved veterinary drug to a child, in violation of state and federal law.

56.     Waksal's breach of fiduciary duties further included his committing corporate waste as his resignation and ensuing acts rendered all of Equilibre's intellectual property virtually worthless especially after Waksal diverted critical investment funding from Equilibre to Graviton, thereby depriving Equilibre of the financial resources necessary for its continued operations.

57.     Upon learning of the investigation and the anticipated outcome, Waksal began to reallocate Equilibre's valuable resources, and the intellectual property developed by Equilibre into Graviton's control.

58.     Waksal, by taking and using Equilibre's trade secrets, research, and proprietary information for his own and Graviton's benefit, and hiring away Equilibre employees before the Company otherwise agreed to his solicitations and poaching, engaged in conversion, further breaching his fiduciary duties.

59.     As a result of Waksal's misconduct, Equilibre was caused to terminate vital research initiatives, including its work with Charles River Laboratories Inc. and Selvita Inc. Equilibre was thereby stripped of its ability to conduct ongoing scientific studies and trials, which were used to continue developing its intellectual property. Instead, those vendors continued to work with Waksal at Graviton and Graviton unlawfully claimed ownership of certain of Equilibre's intellectual property.

60.     Graviton made representations to investors in fundraising documents claiming to own intellectual property that was undeniably developed and owned by Equilibre.

61.     As a direct and proximate result of Waksal's breaches of fiduciary duty, including his causing of corporate waste and his conversion, Equilibre suffered severe financial harm, and the loss of valuable intellectual property, and ultimately was forced to file for bankruptcy as part of its winding up of affairs.

62.     Upon information and belief, Waksal's gross negligence was willful and/or reckless. Accordingly, Plaintiff seeks compensatory and punitive damages, as well as any other relief the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

*(Negligence Per Se Against Waksal)*

63.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "62" as if fully set forth herein.

64.     New York Education Law § 6522 prohibits the practice of medicine or the use of the title "physician" by anyone not licensed or otherwise authorized under the article (McKinney's Education Law § 6522).

65.     New York Education Law § 6521 defines the practice of medicine as diagnosing, treating, operating, or prescribing for any human disease, pain, injury, deformity, or physical condition (McKinney's Education Law § 6521).

66.     New York Penal Law § 6512 states that engaging in the unauthorized practice of medicine is a Class E felony (McKinney's Education Law § 6512).

67.     New York Education Law § 6807 allows only licensed healthcare providers legally authorized to prescribe drugs to supply their patients with such drugs, provided they comply with labeling and dispensing requirements (McKinney's Education Law § 6807).

68.     New York Education Law § 6810 specifies that drugs requiring a prescription under the Federal Food, Drug, and Cosmetic Act or by the commissioner of health must be distributed or dispensed only upon a prescription written by a legally authorized person and compounded or dispensed by a licensed pharmacist (McKinney's Education Law § 6810).

69.     Federal Law (21 U.S.C.A. § 841) makes it unlawful to manufacture, distribute, or dispense controlled substances except as authorized by the subchapter (21 U.S.C.A. § 841).

70.     Federal Law (21 U.S.C.A. § 843) prohibits the use of fictitious, revoked, suspended, expired, or another person's registration number in the course of manufacturing, distributing, or dispensing controlled substances (21 U.S.C.A. § 843).

71.     Federal Food, Drug, and Cosmetic Act (21 U.S.C.A. § 331) prohibits the introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded (21 U.S.C.A. § 331).

72.     Drug Supply Chain Security Act (21 U.S.C. § 351 et seq.) establishes requirements for tracking prescription drugs through the supply chain (not explicitly mentioned in the search results but generally known to be part of the act).

73.     New York Education Law § 6811 makes it illegal to sell or distribute misbranded drugs in New York (not explicitly mentioned in the search results but generally known to be part of the law).

74.     Federal Food, Drug, and Cosmetic Act (21 U.S.C.A. § 331 & § 381(d)) generally prohibits the importation of unapproved drugs into the U.S. (21 U.S.C.A. § 331).

75.     Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.) regulates the import and export of controlled substances (not explicitly mentioned in the search results but generally known to be part of the act).

76.     Customs and Border Protection (CBP) Regulations: CBP and FDA have strict rules on bringing prescription medications into the U.S. without proper authorization.

77.     Waksal's conduct as CEO of Equilibre when he imported, distributed, administered, and prescribed veterinary medication to a child outside of approved protocols, and without FDA authorization, constituted the unauthorized practice of medicine, the unauthorized prescription of medication, and unauthorized transfer of medication across state lines and international borders in violation of some, if not all of the laws, statutes, and regulations referenced above in Paragraphs "64" through "76."

78.     Additionally, Waksal, leading up to and following his forced resignation from Equilibre, converted much of Equilibre's valuable proprietary research, patents, technology, and scientific advancements to Graviton. This action constitutes an unauthorized use of Equilibre's trade secrets without lawful consent, thereby violating the Patent Act, 35 U.S.C. § 271 et seq.

79.     Waksal, as CEO of Graviton, unlawfully utilized Equilibre's proprietary research and intellectual property to advance Graviton's competing biopharmaceutical initiatives.

80.     By converting Equilibre's patented technology and diverting corporate assets and research to Graviton, Waksal directly violated the statutory duties imposed by the Patent Act, constituting negligence *per se*.

81.     Waksal's unauthorized acquisition, disclosure, and use of Equilibre's trade secrets constitute a violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 et seq., and the Uniform Trade Secrets Act (UTSA). Waksal, upon his forced resignation from Equilibre, took proprietary information, including research data, drug formulations, and clinical trial methodologies, and transferred them to Graviton. These statutes impose a duty to protect and maintain the confidentiality of trade secrets, and Waksal's conversion of Equilibre's intellectual property constitutes a direct violation of these statutory provisions. Because the DTSA and UTSA are designed to safeguard against precisely this type of corporate theft, Waksal's actions amount to negligence *per se*. As a direct consequence, Equilibre suffered substantial harm, including the loss of proprietary business information, financial losses, and ultimately, bankruptcy.

82.     Waksal's unauthorized access to Equilibre's confidential research databases and theft of proprietary data violate the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. Following his forced resignation, Waksal wrongfully accessed Equilibre's internal systems to obtain and transfer proprietary business information, research findings, and confidential financial data for the benefit of Graviton. The CFAA establishes a statutory duty prohibiting unauthorized access to protected computer systems, and Waksal's actions directly contravened this legal obligation. His conduct constitutes negligence per se because the statute is specifically designed to prevent such data theft and corporate espionage.

83.     As a direct and proximate result of Waksal's unlawful conduct, Equilibre suffered severe financial harm, loss of investment opportunities, diminished competitive advantage and ultimately, bankruptcy.

### THIRD CLAIM FOR RELIEF

*(Breach of Fiduciary Duty Against Maisonrouge, Wu, and Simon)*

84.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "83" as if fully set forth herein.

85.     As corporate officers and directors of Equilibre, Defendants Maisonrouge, Wu, and Simon owed fiduciary duties of care, loyalty, and good faith to Equilibre and its stakeholders.[3] They were each required to act in the best interests of Equilibre, exercise reasonable diligence in corporate decision-making, and refrain from engaging in self-dealing and the misappropriation of corporate assets and opportunities.

86.     As detailed herein above, Defendants Maisonrouge, Wu, and Simon breached these duties through their providing continued material support to Waksal in furtherance of his violations of corporate governance policies and his flouting of regulatory requirements.

87.     Defendants Maisonrouge, and Simon, as members of Equilibre's Board of Directors, and Wu as a senior vice president, each had actual knowledge of Waksal's misconduct and actively facilitated, concealed, and participated in his breaches of fiduciary duty and disregard for corporate governance rules. Rather than adhering to their fiduciary duties, Defendants Maisonrouge, Wu and Simon aided Waksal by allowing him to divert Equilibre's assets and resources to Graviton, failing to intervene in his misappropriation of corporate opportunities, and

---

[3] Directors and officers are expected to act on an informed basis, in good faith, and in the honest belief that their actions are in the best interests of the corporation. These fiduciary duties apply equally to officers, including senior vice presidents, as they do to directors. (*In re Wonderwork, Inc.*, 611 B.R. 169 (2020)). These duties require officers to act in the corporation's best interests and with the degree of care that an ordinarily prudent person in a similar position would use under similar circumstances (*In re Mundo Latino Market Inc.*, 590 B.R. 610 (2018)).

covering up his misconduct despite clear evidence of regulatory violations and financial mismanagement.

88.     Upon information and belief, Defendants Maisonrouge, Wu and Simon were motivated by their expectations to receive personal benefits from their complicity in Waksal's misconduct, which they actually did receive. Their knowing participation in and facilitation of Waksal's breaches of fiduciary duty directly contributed to Equilibre's inability to secure necessary funding, its regulatory troubles, and ultimately, its bankruptcy.

89.     As a direct and proximate result of the fiduciary duties of Defendants Maisonrouge, Wu, and Simon, Equilibre suffered severe financial harm, including loss of proprietary technology, misappropriated funding, legal liabilities, reputational damage, and bankruptcy.

90.     Accordingly, Plaintiff seeks an award of compensatory and punitive damages against Defendants Maisonrouge, Wu, Simon, and Graviton for their breaches of fiduciary duty. Plaintiff further seeks any other relief the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**

*(Aiding and Abetting Waksal's Breaches of Fiduciary Duty*
*Against Maisonrouge, Wu and Simon)* [4]

91.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "90" as if fully set forth herein.

92.     Under New York law, a claim for aiding and abetting a breach of fiduciary duty requires the plaintiff to establish: (1) a breach by a fiduciary of obligations to another, (2) that the

---

[4] The claims of aiding and abetting breach of fiduciary duty against Defendants Maisonrouge, Wu and Simon, are alleged in the alternative to the claims of breach of fiduciary duty alleged against them. By knowingly aiding and abetting Waksal's breach of fiduciary duty and providing substantial assistance, Maisonrouge, Wu and Simon have, themselves, in accordance with well-settled law, violated their own fiduciary duties owed to Equilibre as directors and officers. (*In re Sharp Intern. Corp.*, 302 B.R. 760 (2003); *Zaccaro v. Shah*, 746 F.Supp.2d 508 (2010)). Nonetheless, it can equally be said that they aided and abetted Waksal's breaches of fiduciary duty.

defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result. *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003).

93.     Here, Waksal, as CEO and President of Equilibre, owed the company a fiduciary duty, including the duty of loyalty and the duty to act in Equilibre's best interests. Instead, he engaged in reckless breaches of that duty by converting Equilibre's intellectual property, diverting investment funding to Graviton, and disregarding corporate governance rules and regulations which ultimately led to Equilibre's collapse.

94.     Defendants Maisonrouge, and Simon, as members of Equilibre's Board of Directors, and Wu as a senior vice president, each had actual knowledge of Waksal's misconduct but actively facilitated, concealed, and participated in his breaches of fiduciary duty and disregard for corporate governance rules. Rather than fulfilling their oversight obligations, Defendants Maisonrouge, Wu and Simon aided Waksal by allowing him to divert Equilibre's assets and resources to Graviton, failing to intervene in his misappropriation of corporate opportunities, and covering up his misconduct despite clear evidence of regulatory violations and financial mismanagement.

95.     Upon information and belief, Defendants Maisonrouge, Wu and Simon were motivated by their expectations to receive personal benefits from their complicity in Waksal's misconduct, which they actually did receive. Their knowing participation in and facilitation of Waksal's breaches of fiduciary duty directly contributed to Equilibre's inability to secure necessary funding, its regulatory troubles, and ultimately, its bankruptcy.

96.     As a direct and proximate result of Defendants Maisonrouge, Wu, and Simon aiding and abetting Waksal's fiduciary breaches, Equilibre suffered severe financial harm, including loss

of proprietary technology, misappropriated funding, legal liabilities, reputational damage, and bankruptcy.

97.     Accordingly, Plaintiff seeks an award of compensatory and punitive damages against Defendants Maisonrouge, Wu, Simon, and Graviton for their role in aiding and abetting Waksal's breaches of fiduciary duty. Plaintiff further seeks any other relief the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

*(Conversion as Against Graviton and Chen)*

98.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "97" as if fully set forth herein.

99.     Under New York law, to establish a claim for conversion the plaintiff must show (1) plaintiff's possessory right or interest in the property and (2) the defendant's dominion over the property or interference with it, in derogation of the plaintiff's rights. (*Razzano v. County of Nassau*, 73 Misc.3d 42 (2021)), (*Siegler v. Lippe*, 189 A.D.3d 903 (2020)).

100.    Here, Waksal, as CEO of Graviton, improperly took possession of Equilibre's intellectual property and held it out to be the sole and exclusive property of Graviton.

101.    Chen, as Chairperson of the Board of Directors or one of Graviton's Board Members, despite having the power to do so, failed to exercise direction and control to prevent the unlawful conversion of Equilibre's intellectual property.

102.    Graviton's taking of and misuse of Equilibre's intellectual property derogated Equilibre's possessory rights of that intellectual property

103.    Chen had or should had known that Graviton was engaging in unlawful conversion and despite having both the authority and ability to prevent it from occurring, failed to do so.

104. As a direct and proximate result of Graviton's conversion of Equilibre's intellectual property, Equilibre suffered severe financial harm, including loss of proprietary technology, lost funding opportunities, reputational harm, and bankruptcy.

105. Accordingly, Plaintiff seeks an award of compensatory damages in an amount to be determined at trial of no less than $25,000,000.00 along with punitive damages against Defendant Graviton and Chen for their conversion of Equilibre's intellectual property. Plaintiff further seeks any other relief the Court deems just and proper.

### SIXTH CLAIM FOR RELIEF

*(Unjust Enrichment Against Graviton and Chen)*

106. Plaintiff repeats, reiterates, and realleges each and every allegation set for in paragraphs "1" through "105" with the same force and effect as if fully set forth herein at length.

107. Graviton's taking of and use of Equilibre's intellectual property conferred a measurable benefit upon Graviton and, thereby, Chen.

108. Graviton and Chen have failed and refused to pay for or acknowledge the improper benefits conferred upon them.

109. Graviton and Chen retained such benefits via circumstances in which, in equity and good conscience, Plaintiff should be paid the fair and reasonable value of Graviton's use of Equilibre's intellectual property. By failing and refusing to pay for the use of this intellectual property, Graviton and Chen have been unjustly enriched including, but not limited to, raising investments by improperly holding itself out as the sole and exclusive owner of this intellectual property.

110. Plaintiff has been damaged by Graviton's unjust enrichment. The fair and reasonable value of the Plaintiff's misused intellectual property is, at least, $25,000,000.

**WHEREFORE**, the Trustee respectfully requests that this court enter an Order granting judgment against Waksal, and the other Defendants, jointly and severally, as compensatory damages for their breaches of fiduciary duties, in an amount to be determined at trial but in no event less than $125,000,000.00 reflecting the lost value of Equilibre and for the Defendants' Graviton and Chen's conversion of Company data, secrets, and intellectual property, in an amount to be determined at trial but in no event less than $25,000,000.00, plus, punitive damages in an amount to be determined at trial, together with interests, costs, including reasonable attorneys' fees and such other and further relief as this Court deems just and proper.

Dated: New York, New York
      April 21, 2025

**THE LAW OFFICES OF NEAL BRICKMAN, P.C.**

By: /s/ Neal Brickman
Neal Brickman, Esq.
Jason A. Stewart, Esq.
420 Lexington Avenue, Suite 2811
New York, New York 10170
(212)-986-6840
neal@brickmanlaw.com
jason@brickmanlaw.com
*Special Litigation Counsel to Gregory M. Messer,*
*Chapter 7 Trustee*