**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>EQUILIBRE BIOPHARMACEUTICALS CORP.,<br><br><div align="right">*Debtor.*</div> | |
| GREGORY M. MESSER Solely in His Capacity as Chapter 7 Trustee of the Estate of Equilibre Biopharmaceuticals Corp.,<br><br><div align="right">*Plaintiff,*</div><br><div align="center">-against-</div><br>SAMUEL WAKSAL, individually, as the former Chairperson, Chief Executive Officer, and President of Equilibre Biopharmaceuticals Corp. Chairperson, and Chief Executive Officer and President of Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp. (USA), and Graviton Bioscience B.V., FRANCOIS MAISONROUGE, RUI WU, PETER SIMON, GRAVITON BIOSCIENCE CORPORATION, GRAVITON BIOSCIENCE HOLDING CORPORATION, GRAVITON US CORP. (USA), GRAVITON BIOSCIENCE B.V., BIHUA CHEN,<br><br><div align="right">*Defendants.*</div> | Bankruptcy Case No.<br>23-12099 (PB)<br><br>Chapter 7<br><br>Adversary Proceeding Case No.<br>25-01087 (PB) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE ADVERSARY PROCEEDING OR TO STAY THE ACTION

**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
(212) 344-5400

*Attorneys for Defendants Samuel Waksal,*
*Rui Wu, Graviton Bioscience Corporation,*
*Graviton Bioscience Holding Corporation,*
*Graviton US Corp. (USA), Graviton*
*Bioscience B.V., and Bihua Chen*

July 21, 2025

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................3

    A.  Factual background ...................................................................................3

    B.  This Adversary Proceeding.........................................................................7

    C.  The State Court Action ..............................................................................8

ARGUMENT ........................................................................................................9

  I.  Equilibre Released Any Claims Against Waksal For Conduct While He Was Employed By Equilibre ...............................................................................................9

  II.  Plaintiff's Complaint Fails to Plausibly Allege Any Viable Claims ..................................11

    A.  Equilibre has not stated a claim for breach of fiduciary duty or aiding and abetting a breach of fiduciary duty against Waksal or Wu (Counts I, III, IV) .............................11

    B.  Equilibre has not stated a claim for negligence *per se* against Waksal (Count II) ......13

    C.  Equilibre has not stated a claim for conversion against Graviton or Chen (Count V) 16

    D.  Equilibre has not stated a claim for unjust enrichment against Graviton or Chen (Count VI).................................................................................................18

  III.  The Court Lacks Personal Jurisdiction Over Graviton B.V. ............................................20

  IV.  Alternatively, This Court Should Abstain From Ruling On This Action While The State Court Action Is Pending.................................................................................................22

CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

2024 WL 4345580 (S.D.N.Y. Sept. 30, 2024)................................................................. 16

*Amusement Indus., Inc. v. Stern*,
   786 F. Supp. 2d 758 (S.D.N.Y. 2011) .................................................................. 20

*Bah v. City of New York*,
   2014 WL 1760063 (S.D.N.Y. May 1, 2014)........................................................... 13

*Bloom v. U.S. Gov't*,
   2003 WL 22327163 (S.D.N.Y. Oct. 10, 2003) ........................................................ 17

*Brown v. Kay*,
   889 F. Supp. 2d 468 (S.D.N.Y. 2012)................................................................... 10

*Bulgari v. Bulgari as Tr. of Anna Bulgari Fam.*,
   Tr. #1, 2024 WL 3498781 (S.D.N.Y. July 22, 2024).............................................. 16

*Cardoso v. Wells Fargo Bank, N.A.*,
   2022 WL 4368109 (S.D.N.Y. Sept. 20, 2022) ....................................................... 15

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
   17 N.Y.3d 269 (2011) ......................................................................................... 9

*Corsello v. Verizon New York, Inc.*,
   18 N.Y.3d 777 (2012) ....................................................................................18, 19

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)................................................................................9, 10

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) .......................................................................................... 21

*DeBlasio v. Merrill Lynch & Co.*,
   2009 WL 2242605 (S.D.N.Y. July 27, 2009) ....................................................... 13

*Diesenhouse v. Soc. Learning & Payments, Inc.*,
   2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022) ........................................................ 11

*Ferring B.V. v. Allergan, Inc.*,
   4 F. Supp. 3d 612 (S.D.N.Y. 2014)...................................................................... 17

*Fraternity Fund Ltd. V. Beacon Hill Asset Mgmt., LLC*,
   479 F. Supp. 2d 349 (S.D.N.Y. 2007).................................................................. 13

*Garvey v. Face of Beauty LLC,*
    634 F. Supp. 3d 84 (S.D.N.Y. 2022) ........................................................................ 11

*Hudson Neurosurgery, PLLC v. UMR, Inc.,*
    2023 WL 6311218 (S.D.N.Y. Sept. 28, 2023) ........................................................ 20

*In re Adelphia Commc'ns Corp.,*
    285 B.R. 127 (Bankr. S.D.N.Y. 2002) .................................................................... 23

*In re Hydrogen, L.L.C.,*
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) ............................................................. 11, 13

*In re Mundo Latino Mkt. Inc.,*
    590 B.R. 610 (Bankr. S.D.N.Y. 2018) .................................................................... 16

*In re Petrie Retail, Inc.,*
    304 F.3d 223 (2d Cir. 2002) ................................................................................... 24

*In re Tops Holding II Corp.,*
    646 B.R. 617 (Bankr. S.D.N.Y. 2022) .................................................................... 12

*In re Trinsum Grp., Inc.,*
    466 B.R. 596 (Bankr. S.D.N.Y. 2012) .................................................................... 11

*In re USAA Data Sec. Litig.,*
    621 F. Supp. 3d 454 (S.D.N.Y. 2022) .................................................................... 14

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,*
    62 F.3d 69 (2d Cir. 1995) ....................................................................................... 10

*Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC,*
    463 F. Supp. 3d 490 (S.D.N.Y. 2020) .................................................................... 12

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000) ................................................................................... 20

*Kumaran v. Northland Energy Trading, LLC,*
    2021 WL 797113 (S.D.N.Y. Feb. 26, 2021) .......................................................... 12

*Laub v. Faessel,*
    297 A.D.2d 28 (1st Dep't 2002) ............................................................................. 12

*Lehman Bros. Special Fin. Inc. v. Bank of Am. (In re Lehman Bros. Holdings, Inc., et al.),*
    535 B.R. 608 (Bankr. S.D.N.Y. 2015) .................................................................... 21

*Lerner v. Fleet Bank, N.A.,*
    459 F.3d 273 (2d Cir. 2006) ................................................................................... 13

*Lia v. Saporito*,
  909 F. Supp. 2d 149 (E.D.N.Y. 2012) ................................................................. 11

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*,
  2021 WL 3541153 (S.D.N.Y. Aug. 11, 2021) ........................................................ 8

*Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc.*,
  2004 WL 2903745 (S.D.N.Y. Dec. 15, 2004) ....................................................... 18

*Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*,
  14 A.D.3d 678 (2d Dep't 2005) ........................................................................... 19

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*,
  714 F.3d 659 (2d Cir. 2013) .......................................................................... 20, 21

*Pesserillo v. Nat'l Grid*,
  78 F. Supp. 3d 551 (E.D.N.Y. 2015) .................................................................... 10

*Reis, Inc. v. Spring11 LLC*,
  2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016) ...................................................... 17

*Requa v. Coopers & Lybrand*,
  303 A.D.2d 159 (1st Dep't 2003) ......................................................................... 14

*Rider v. Uphold HQ Inc.*,
  657 F. Supp. 3d 491 (S.D.N.Y. 2023) .................................................................. 14

*Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*,
  192 F. Supp. 3d 348 (S.D.N.Y. 2016) ............................................................. 18, 19

*Schwartz v. HSBC Bank USA, N.A.*,
  160 F. Supp. 3d 666 (S.D.N.Y. 2016) .................................................................. 10

*Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*,
  589 F. Supp. 3d 401 (S.D.N.Y. 2022) .................................................................. 19

*Toretto v. Donnelley Fin. Sols., Inc.*,
  583 F. Supp. 3d 570 (S.D.N.Y. 2022) .................................................................. 15

*Transaero, Inc. v. Chappell*,
  2014 WL 1783732 (E.D.N.Y. May 6, 2014) ......................................................... 17

*Yak v. Bank Brussels Lambert*,
  252 F.3d 127 (2d Cir. 2001) ................................................................................ 10

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
  592 F. Supp. 3d 146 (S.D.N.Y. 2022) .................................................................. 14

*Zebra Strategies, Inc. v. Gonzalez-Nazario*,
    764 F. Supp. 3d 144 (S.D.N.Y. 2025) ............................................... 17

*Zirvi v. Flatley*,
    433 F. Supp. 3d 448 (S.D.N.Y. 2020) ............................................... 18

**Statutes**

18 U.S.C. § 1832(a) .......................................................................... 14

28 U.S.C. § 1334(c)(1) ..................................................................... 24

28 U.S.C. § 1334(c)(2) ..................................................................... 23

Section 1334 .................................................................................... 23

**Rules**

Fed. R. Bankr. P. 5011(c) .................................................................. 1

Fed. R. Bankr. P. 7012(b) .................................................................. 1

Fed. R. Civ. P. 8(a) and 12(b)(6) .................................................. 1, 11

Rule 8 ............................................................................................. 12

Rule 12(b)(2) ..................................................................................... 1

Rule 12(d) of the Federal Rules of Civil Procedure ......................... 10

Defendants Samuel Waksal, Rui Wu, Graviton Bioscience Corporation, Graviton Bioscience B.V. ("Graviton BV"), Graviton US Corp. (USA), Graviton Bioscience Holding Corporation (all the corporate defendants are collectively referred to as "Graviton"), and Bihua Chen (collectively referred to as the "Defendants") submit this memorandum of law, together with the Declarations of Jolene LaVigne-Albert ("JLA Decl.") and Duncan Rennie ("DR Decl."), in support of their motion to dismiss this adversary proceeding pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) for failure to state a claim and Rule 12(b)(2) for lack of personal jurisdiction (in the case of Graviton BV), applicable to this proceeding by Fed. R. Bankr. P. 7012(b), or alternatively, to abstain from this case pending the resolution of the state action, captioned *L4 Bio, LLC v. Graviton Bioscience Corp.*, N.Y. Sup. Ct. Index No. 652469/2025 (the "State Court Action").[1]

## PRELIMINARY STATEMENT

Having run itself into bankruptcy, Equilibre Biopharmaceuticals Corp. ("Equilibre") filed this adversary complaint seeking to blame Defendants for its own failures. But the allegations here uniformly fail to state any viable cause of action.

Graviton and Equilibre were founded in 2020 by Defendant Samuel Waksal, an internationally recognized leader in the biotechnology industry. Waksal was the chief executive officer, president, chair and majority shareholder of both companies. Steven Gordon was also a senior officer, director, and a large shareholder of both companies. The breakdown of Waksal and Gordon's relationship ultimately led to Waksal's resignation from Equilibre and Equilibre's bankruptcy. As part of Waksal's separation from Equilibre, Equilibre released him from any and all claims. This release provides ground to dismiss much of the Complaint.

---

[1] Defendants bring this motion to dismiss without prejudice to their prior motion to withdraw the reference in this matter. Defendants continue to believe that withdrawal is appropriate but have filed this motion to comply with their obligations under the current case schedule. *See* Fed. R. Bankr. P. 5011(c) (providing that motion to withdraw reference does not stay proceedings).

Independent of the release, the Complaint fails to allege facts necessary to state any cause of action. Underlying every count is the assertion that Waksal improperly transferred certain intellectual property ("IP") away from Equilibre and to Graviton. But Equilibre never specifies what IP was allegedly transferred. Equilibre does not even identify a general category of IP. The Complaint is entirely vague as to what is actually at issue here. Nor is the specific IP alleged to be at issue the only detail missing from Equilibre's complaint. The Complaint never alleges when the IP was purportedly taken, who did the taking, how the taking occurred, or what Graviton did with it. All these facts are essential to state a viable claim. None are alleged in the Complaint.

The list goes on. Equilibre asserts that Waksal violated his fiduciary duties to the company by treating an epileptic child with a non-FDA-approved medication. The Complaint specifies neither the medication at issue nor when this occurred. It does not describe the effects of the treatment on the child, let alone how this alleged conduct harmed Equilibre.

Equilibre attempts to state a claim for negligence *per se* by asserting intentional conduct. But a claim for negligence based on intentional conduct is a contradiction in terms and cannot support a claim. Equilibre's attempt to use a negligence *per se* claim to assert a private right of action under state and federal statutes is a misuse of the claim and merits dismissal. Dismissal is all the more warranted because any negligence claim is duplicative as it is entirely encompassed within Equilibre's breach of fiduciary duty claim.

Equilibre's attempts to allege a claim for conversion and unjust enrichment also fail. Once again, Equilibre has not alleged what IP was converted. And, in any event, IP is generally not amenable to claims for conversion when the rightful owner is not completely deprived of use of the IP. Equilibre makes no such claim of deprivation here. Equilibre's unjust enrichment claim is duplicative of its conversion claim and fails for the same reasons.

While Equilibre is vague as to the IP it claims to be at issue here, the related State Court Action filed by Equilibre's successor in interest provides some clue. In the State Court Action, L4 Bio LLC (which purchased Equilibre's IP) claims it co-owns Graviton's IP portfolio, which, as L4 Bio concedes, is entirely "in the ROCK2 inhibitor field." Virtually all the counts in the Complaint here allege in whole or in part that Equilibre's IP was misappropriated by Waksal. Of course, these claims presuppose that Equilibre owns the IP—meaning the IP related to ROCK2 inhibitors. Thus, this lawsuit is almost certainly about the alleged misappropriation of ROCK2 IP, the same issue in the State Court Action. The predicate issue in both cases is, thus, the true ownership of the ROCK2 inhibitors IP. If this Court does not dismiss the claims here in their entirety, it should abstain from hearing the matter further and stay proceedings until the State Court Action is resolved. That resolution will necessarily determine the predicate issue that underlies Equilibre's claims. As mandated by statute and as a discretionary matter based on considerations of judicial efficiency, this Court should allow for the issue of state law to be decided first by the state court.

## STATEMENT OF FACTS

This case arises from Equilibre's attempt to free-ride off the success of Graviton after its own business collapsed. For purposes of this motion only, Defendants assume the facts alleged in the Complaint to be true. Nonetheless, Defendants vigorously dispute the allegations and conclusions set forth in the Complaint and will contest them at the appropriate time.

### A. Factual background

Equilibre was a biotech company focused on developing treatments for neurological diseases (Compl. ¶ 21). Equilibre sought to develop a variant of ivermectin to treat seizure disorders like epilepsy. Defendant Waksal was Equilibre's chief executive officer, president, chair of the board, and largest shareholder (*id.* at ¶ 1).

Waksal was also the chair, chief executive officer and president of Defendants Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp., and Graviton Bioscience B.V. (Compl. ¶ 5). Defendant Chen is alleged to have been Graviton's chair of the board of directors or one of Graviton's board members during the relevant period (*id.* at ¶ 20). The Graviton companies were a separate venture, working on distinct IP, though they shared certain common ownership, directors, and officers with Equilibre.

While Equilibre sought to develop treatments for seizure disorders, Graviton focused on developing treatments for fibrotic, autoimmune, metabolic, and cancer-related diseases, among other indications. Equilibre worked with ivermectin, namely its product candidate EQU-001. Graviton, meanwhile, worked with ROCK2 inhibitors, including GV101. (ROCK2 is an enzyme involved in various cellular processes. Inhibiting that enzyme can modulate those processes, potentially with therapeutic effects.) (JLA Decl. ¶¶ 6, 30).[2]

The two companies pursued their separate lines of research and development under a July 2021 Shared Services Agreement (the "SSA") that specified what IP belonged to which entity. (JLA Decl. Ex. 6). This clear division of IP was consistently confirmed thereafter by a series of subsequent agreements and assignments.

As alleged in the Complaint, Equilibre's audit committee initiated an investigation in March 2022 into claims of misconduct by Waksal (Compl. ¶ 30). As alleged in the Complaint, the investigation discovered that Waksal had imported, distributed, prescribed, and administered a non-FDA-approved veterinary drug to a child suffering from severe epilepsy (*id.* at ¶ 32). Defendant Wu, who at the time was Equilibre's senior vice president of preclinical research, is

---

[2] The declaration of Jolene LaVigne-Albert is provided to place the Waiver Agreement (described below) before the Court and in support of Defendants' alternative request for this Court to abstain from and stay proceedings in this matter pending resolution of the State Court Action.

alleged to have acquired the medication from Colombia and mixed it with other unapproved ingredients (*id.* at ¶ 40). The Complaint does not allege when this conduct was purported to have occurred, what drug and other ingredients were involved, the effects of the drug on the child, or any harm that Equilibre suffered as a result of this alleged conduct. The Complaint also alleges that the investigation found that Waksal had hired a no-show employee, leading to payment to resolve an employee whistleblower claim; fostered a hostile work environment; and obstructed the investigation (*id.* at ¶¶ 33–35). Waksal is further alleged to have conducted "secret Board and committee meetings" and overseen the approval of self-dealing vendor contracts (*id.* at ¶¶ 46–47). These allegations, too, are devoid of details about the dates of the alleged meetings, the alleged contracts entered into, and specific conduct alleged to be at issue.

The Complaint also claims that Waksal "with the assistance of the other Defendants transferred Equilibre's proprietary research, technology, and scientific advancements to Graviton" (Compl. ¶ 37). This allegedly included converting Equilibre's "confidential research, pre-clinical data, and intellectual property for the benefit of Graviton, including by directing the unauthorized access of Equilibre's servers and the removal of Equlibre's name from vendor reports" (*id.* at ¶ 44). The Complaint never alleges—even in broad, categorical terms—what IP was alleged to have been transferred. It does not allege when the IP (whatever it was) is supposed to have been transferred. It does not allege whether Waksal acted personally or through an agent. It does not allege how that individual accessed and transferred the IP. There is no allegation as to what Graviton did with the IP after receiving it.

The other Defendants are alleged to have known about, concealed, and endorsed Waksal's actions (*id.* at ¶ 38). How the Defendants knew about the alleged conduct and what they did to conceal and endorse the conduct is not alleged.

Finally, the Complaint alleges that Defendants "diverted investors who were prepared to fund Equilibre toward Graviton" (Compl. ¶ 37). The Complaint does not identify the purported investors, the state of negotiations with Equilibre prior to Defendants' alleged diversion, which Defendants engaged in the diversion, how that diversion was accomplished, or when it occurred. The Complaint alleges that Waksal disparaged Equilibre's senior management to potential investors (*id.* at ¶ 49). But it does not state what Waksal is alleged to have said, when he is alleged to have said it, to whom he is alleged to have said it, or what, if any, effect the statements had on the unidentified potential investors.

In May 2022, the audit committee recommended Waksal's termination (Compl. ¶ 35). Waksal resigned from his various roles with Equilibre and turned his attention to Graviton (*id.* at ¶ 37). During the process of formalizing his resignation, Waksal and Equilibre executed a Restrictive Covenant Waiver Agreement (the "Waiver Agreement") (JLA Decl. Ex. 1). In relevant part, the Waiver Agreement contained a broad release provision by which Equilibre released Waksal from any claims through the execution date of the agreement:

> Equilibre, for itself and on behalf of its current and former officers, directors, affiliates, investors, owners, divisions, subsidiaries, predecessor and successor corporations, and assigns, including without limitation Gordon, Thorn, and Barach, agrees to forever waive and release any and all claims of any kind that they have or may have against Executive, his agents, attorneys and heirs, and hereby and forever release Executive from any and all manner of actions, causes of action, suits, charges, claims, complaints, controversies, counterclaims, damages, decrees, defenses, demands, damages, debts, liabilities, or judgments whatsoever, including, without limitation, attorneys' fees, known or unknown, accrued or which may accrue, through the execution date of this Waiver Agreement, whether known or unknown, actual or contingent, asserted or unasserted, arising under common law, statute, or otherwise, including, without limitation, those arising pursuant to any federal, state, or local laws.

(*id.* § 3(d)). The Waiver Agreement was executed on October 27, 2022 (*id.* at 5–6).

After Waksal's exit from the company, Equilibre was no longer able to raise the necessary funding to continue its operations (Compl. ¶ 51). Unable to obtain further funding, Equilibre filed for bankruptcy in December 2023 (ECF No. 1[3]). In Equilibre's summary of assets and liabilities—signed under penalty of perjury by Gordon, as Equilibre's Chief Operating, Legal and Compliance Officer—Equilibre asserted that its "intangibles and intellectual property" had no value at all (ECF No. 8 at 8).

A few months after the bankruptcy filing, Gordon approached the Bankruptcy Trustee with an offer to purchase, through a new venture called L4 Bio LLC, Equilibre's rights and interests in "any drug development, biotechnology or biopharmaceuticals" for $65,000 (ECF No. 48 ¶¶ 8–9; ECF No. 36-1). The $65,000 purchase was theoretically negotiated at arm's length to reflect the value of the assets sold. The Bankruptcy Court approved the sale in August 2024 (ECF No. 46).

## B.  <u>This Adversary Proceeding</u>

Months after the sale, the special litigation counsel representing the Trustee in this action, the Brickman Firm, disclosed that L4 Bio and associated individuals had retained it to advance claims regarding the IP that L4 Bio supposedly purchased from the estate (ECF No. 48 ¶ 10). The Brickman Firm indicated that while investigating those claims, it discovered potential estate claims and approached the Trustee about bringing those estate claims on his behalf. The Bankruptcy Trustee thereafter sought leave to appoint the Brickman Firm for that purpose (*id.* at ¶¶ 11, 18).

---

[3] Citations to "ECF" Refer to the docket in the underlying bankruptcy proceeding: *In re:Equilibre Biopharmaceuticals Corp.* (Bankr. S.D.N.Y. Case No. 23-12099 (PB)).

By order dated March 25, 2025, the Bankruptcy Court authorized the Trustee to appoint "special litigation counsel to investigate Estate Claims and if appropriate, pursue those claims to recovery" (ECF No. 51). The estate retained L4 Bio's counsel, the Brickman Firm. The next month, counsel filed the Complaint initiating this adversary proceeding. The Complaint alleges a series of state common law causes of action for breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, negligence *per se*, conversion, and unjust enrichment against Waksal, the various Graviton entities, and other directors and officers of Equilibre (Compl. ¶¶ 53–110).

### C. **The State Court Action**

On the same date the Complaint in this proceeding was filed, Equilibre's successor in interest (L4 Bio), using the same counsel, filed the State Court Action against Graviton in New York State Supreme Court seeking a declaratory judgment that, as Equilibre's successor in interest, L4 Bio is the co-owner of all IP owned by Graviton, with such IP being defined as solely relating to ROCK2 Inhibitors. (JLA Decl. Ex. 2).

But L4 Bio attached to its complaint documents that refuted its own claims (and many of the claims that Equilibre raises here).[4] For instance, the Complaint attached the SSA that Equilibre and Graviton executed in July 2021 (JLA Decl. Ex. 6). The SSA expressly and irrevocably divides ownership of IP between Graviton and Equilibre based on the subject matter of the IP developed, while giving Graviton and Equilibre each a license to the other's IP for purposes of performing their obligations under the SSA and using any deliverables provided pursuant to the SSA. Under the SSA, ivermectin-related IP is solely owned by Equilibre, while GV101-related IP is solely owned by Graviton (*id*. § 2.1).

---

[4] This Court may take judicial notice of the complaint filed in the State Court Action. *See, e.g.*, *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, 2021 WL 3541153, at *4–5 (S.D.N.Y. Aug. 11, 2021).

Graviton has moved to dismiss the State Court Action on the grounds that the relevant agreements unambiguously provide for Graviton—not Equilibre/L4 Bio—to own the ROCK2 inhibitor IP (JLA Decl. Exs. 3–5). Regardless of the outcome (we expect the motion to dismiss to be granted), the ownership of the disputed IP will be resolved by L4 Bio's declaratory judgment claim in the State Court Action.

## ARGUMENT

## I. EQUILIBRE RELEASED ANY CLAIMS AGAINST WAKSAL FOR CONDUCT WHILE HE WAS EMPLOYED BY EQUILIBRE

As a threshold matter, any claims against Waksal for conduct prior to October 27, 2022 are barred by the broad and unambiguous release in the Waiver Agreement. In New York, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276–77 (2011). Thus, Equilibre cannot assert in this lawsuit any claims against Waksal arising from conduct prior to October 27, 2022 (JLA Decl. Ex. 1 § 3(d)). And while the Complaint is vague regarding the timing of the alleged conduct (as will be discussed in more detail below), this release necessarily encompasses the entirety of the allegations regarding Waksal's alleged treatment of a child with non-FDA-approved medication and any alleged sexual harassment which necessarily occurred prior to his May 2022 resignation; any alleged funding or IP that were diverted from Equilibre prior to October 27, 2022; and any trade secrets, research, proprietary information, or employees that were diverted from Equilibre prior to October 27, 2022.

The fact that the Waiver Agreement was omitted from Equilibre's Complaint is no impediment to considering it on this motion to dismiss. There can be no doubt that this was a document that Equilibre "had either in its possession or had knowledge of and upon which [it] relied in bringing suit." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

9

The Complaint includes repeated discussion of Waksal, his resignation, and the events leading up to it, which form the core of the Complaint's allegations (*see* Compl. ¶¶ 3–4, 29–31, 35, 37). Thus, the agreement effectuating the resignation is integral to the Complaint and should be considered. *Cortec Indus.*, 949 F.2d at 48; *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). "Carefully avoiding all mention" of the Waiver Agreement does not make it "any less integral to [the] complaint." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 131 (2d Cir. 2001). Equilibre "should not so easily be allowed to escape the consequences of its own failure" to attach an integral document. *Cortec Indus.*, 949 F.2d at 47.

This rule applies particularly where the release contained in the Waiver Agreement is dispositive of many of the claims here. Equilibre is not the first plaintiff to try to avoid the consequences of such a release by intentionally omitting it from its pleading. But Equilibre's "failure to include matters of which as pleader [it] had notice and which were integral to [its] claim—and that [it] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion." *Pesserillo v. Nat'l Grid*, 78 F. Supp. 3d 551, 554 (E.D.N.Y. 2015) (cleaned up). Instead, despite Equilibre's "deliberate decision to omit any reference to" the Waiver Agreement from the Complaint, this Court should "deem[] the Agreement incorporated into the Complaint by reference, particularly since it is integral to [Equilibre's] ability to pursue" its claims. *Id.* at 554–55.[5]

---

[5] In the event the Court disagrees that the Waiver Agreement is integral to the Complaint, the Court should convert this portion of the motion to one for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure and require Equilibre to address the issue in opposition. *See Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 672 (S.D.N.Y. 2016); *Brown v. Kay*, 889 F. Supp. 2d 468, 479 (S.D.N.Y. 2012), *aff'd*, 514 F. App'x 58 (2d Cir. 2013). The existence and validity of this agreement is dispositive for the bulk of Equilibre's allegations and so should be decided at the earliest available opportunity.

## II.    PLAINTIFF'S COMPLAINT FAILS TO PLAUSIBLY ALLEGE ANY VIABLE CLAIMS

### A. Equilibre has not stated a claim for breach of fiduciary duty or aiding and abetting a breach of fiduciary duty against Waksal or Wu (Counts I, III, IV)

Equilibre fails to state any claim against Waksal or Wu arising from a breach of their fiduciary duties. The Complaint alleges that Waksal and Wu breached their fiduciary duties to the company and that Wu also aided and abetted further breaches of fiduciary duty. But these claims are doomed by Equilibre's failure to allege any specific facts that render those claims plausible.

To survive a motion to dismiss, Equilibre was required to plead its breach of fiduciary duty claim "with particularity." *In re Trinsum Grp., Inc.*, 466 B.R. 596, 618 (Bankr. S.D.N.Y. 2012); *Lia v. Saporito*, 909 F. Supp. 2d 149, 170 (E.D.N.Y. 2012). A complaint without "underlying facts as to when, who, or how, falls short of the facts needed to plead a plausible breach of fiduciary duty claim." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 93 (S.D.N.Y. 2022) (R&R). "Vague and general allegations" that do not contain the "circumstances, occurrences, and events required to be alleged under Federal Rule of Civil Procedure 8(a)" must be dismissed. *In re Hydrogen, L.L.C.*, 431 B.R. 337, 348 (Bankr. S.D.N.Y. 2010).

Vague and general allegations are all that Equilibre offers here. It claims that Waksal and Wu breached their fiduciary duties to the company by treating the child of an employee with a non-FDA-approved drug. The Complaint does not allege when this conduct was purported to have occurred, making it impossible to know if the allegations are even timely.[6] Nor does it identify the drug involved or what effects (if any) the drug had on the treated child. Most damningly, Equilibre entirely fails to allege how it was harmed by any of this alleged conduct. But to bring a viable claim for breach of fiduciary duty, Equilibre was required to plead that the misconduct alleged was

---

[6] The statute of limitations in New York for a breach of fiduciary duty claim seeking money damages is three years. *Diesenhouse v. Soc. Learning & Payments, Inc.*, 2022 WL 3100562, at *9 (S.D.N.Y. Aug. 3, 2022).

"the direct and proximate cause of the losses claimed." *Laub v. Faessel*, 297 A.D.2d 28, 30 (1st Dep't 2002). Equilibre does not even try.

Equilibre's allegations regarding the purported misappropriation of IP are also alleged too abstract to support a viable claim. To satisfy Rule 8's pleading requirements for such a claim, Equilibre was required to allege "in at least some identifying detail, the trade secret [Waksal] is alleged to have misappropriated." *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020). But when the "allegedly stolen trade secrets" are identified "only in the broadest terms," the "extremely general description is not adequate to put Defendants on notice of the trade secrets at issue" and the claim must be dismissed. *Id.*; *accord Kumaran v. Northland Energy Trading, LLC*, 2021 WL 797113, at *11 (S.D.N.Y. Feb. 26, 2021). Here, the Complaint does not even provide a general description of the IP alleged to have been misappropriated. Nor does the Complaint allege when the unspecified IP was supposed to have been transferred. It does not allege whether Waksal acted personally or through an agent, and it fails to allege how that individual accessed and transferred the IP.

There are no specific allegations of any direct involvement by Wu. Instead, the Complaint alleges only that "the other defendants" assisted Waksal in some undefined way (Compl. ¶ 37). This suffers from the same fatal ambiguities described above. It is worse here because the allegations are against the group of "other defendants" rather than Wu specifically. But Equilibre must allege "a loyalty breach against each individual director; so-called 'group pleading' will not suffice." *In re Tops Holding II Corp.*, 646 B.R. 617, 701 (Bankr. S.D.N.Y. 2022). This, too, merits dismissal of the allegations.

Equilibre's attempt to assert a claim for aiding and abetting a breach of fiduciary duty also fails. Equilibre cannot state a claim for aiding and abetting a breach of fiduciary duty when it has

failed to state a claim for the primary breach. *In re Hydrogen, L.L.C.*, 431 B.R. at 352; *DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605, at *27 (S.D.N.Y. July 27, 2009).

Moreover, the Complaint comes nowhere close to pleading specific facts demonstrating that Wu had "actual knowledge" of Waksal's alleged misconduct. The pleading bar for actual knowledge is "a heavy one." *Fraternity Fund Ltd. V. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007). Equilibre must plead facts demonstrating that Wu actually knew that Waksal was breaching his fiduciary duties. Allegations of mere constructive knowledge or recklessness—including, as alleged here, claims that Wu "should have known" of the misconduct—are not sufficient. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006). The Complaint is devoid of any allegations that would establish Wu's actual knowledge.

### B. **Equilibre has not stated a claim for negligence *per se* against Waksal (Count II)**

Equilibre's allegations regarding negligence *per se* reflect a profound misunderstanding of the claim. The Complaint lists approximately two dozen statutes under state and federal law (Compl. ¶¶ 64–76, 78, 81–82). It then alleges that Waksal's conduct in purportedly treating a child with a non-FDA-approved medication and misappropriation of Equilibre's IP violated "some" of these statutes (*id.* at ¶¶ 77–78).

Starting at the most basic level, Equilibre's negligence *per se* allegations relate to intentional rather than negligent conduct. "Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence." *Bah v. City of New York*, 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014). Thus, "when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed." *Id.* Here, Equilibre alleges that Waksal "imported, distributed, administered, and prescribed veterinary medication to a child outside of approved protocols, and without FDA authorization" (Compl. ¶ 77). It also alleges that

Waksal "converted much of Equilibre's valuable proprietary research, patents, technology, and scientific advancements" (*id.* at ¶ 78). All these claims allege intentional conduct.

The statutes on which Equilibre relies for its claim underscore the intentional nature of the conduct alleged. To take just one example, Equilibre tries to base part of its claim on a purported violation of the Defend Trade Secrets Act (Compl. ¶ 81). That statute makes it a crime to "knowingly" take a variety of actions "with intent to convert a trade secret" while "intending or knowing that the offense will, injure any owner of that trade secret." 18 U.S.C. § 1832(a). Equilibre's apparent negligence claim here is that Waksal was negligent when he knowingly and with intent acted in violation of statute. Knowing and intentional negligence is legal nonsense that cannot support a claim.

Because Equilibre alleges intentional conduct that categorically cannot give rise to a negligence claim, it seems that the real goal here is to bring a private cause of action under various statutes that do not otherwise allow for it. But this is a misuse of a negligence *per se* claim. Such a claim is not a backdoor to create a private right of action under statutes that do not provide that right. To the contrary, the statutory creation of a private right of action "is a prerequisite to asserting a claim for negligence *per se* under New York law." *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 471 n.7 (S.D.N.Y. 2022). The statutes on which Equilibre bases its claim do not create private rights of action. *See, e.g.*, *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 155 (S.D.N.Y. 2022) (holding the FDCA does not create a private right of action); *Requa v. Coopers & Lybrand*, 303 A.D.2d 159 (1st Dep't 2003) (holding that New York's Education Law regarding regulation of the admission to and practice of certain professions does not provide a private right of action). Thus, "a decision to allow such a claim would effectively afford a private right of action that the statute does not recognize—contravening the legislative scheme." *Rider v.*

*Uphold HQ Inc.*, 657 F. Supp. 3d 491, 503 (S.D.N.Y. 2023); *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 598 (S.D.N.Y. 2022). This is inappropriate and merits dismissal. *Id.*

Even if Equilibre's negligence *per se* allegations were cognizable, they are too vague and conclusory to adequately allege a viable claim. Take, for instance, the allegations that Waksal imported and treated a child with a non-FDA-approved drug (*see* Compl. ¶¶ 3, 32, 34, 40, 77). Nowhere does Equilibre allege when this occurred, what drug was used, or any other details. There is no allegation of how Equilibre was harmed—or even how it potentially could have been harmed—by Waksal's alleged conduct. The Complaint never alleges that the child who received the medication—the most obvious "victim" of the alleged conduct—suffered any harm.

The allegations regarding Waksal's purported theft of IP fare no better (*see* Compl. ¶¶ 5, 37, 44, 78). The Complaint never alleges what specific IP was purportedly taken. It does not allege when it was taken, how it was taken, or what was done with it. Equilibre cannot state a viable cause of action with allegations lacking any measure of specificity.

Instead of detailing the specifics of the alleged negligent conduct, Equilibre states only the barest of bones to describe the alleged conduct and then cites a litany of statutes purportedly violated by that conduct (Compl. ¶¶ 64–82). But simply giving a broad description of conduct and claiming that it violates a statute does not state a claim for negligence *per se. Cardoso v. Wells Fargo Bank, N.A.*, 2022 WL 4368109, at *6 (S.D.N.Y. Sept. 20, 2022).

The vagueness is even more pronounced when considering that even Equilibre seems unsure of what statutes it believes Waksal's conduct violated. Equilibre alleges that Waksal's conduct violated "some" of the approximately two dozen statutes and regulations Equilibre lists in the Complaint (Compl. ¶ 77). By acknowledging that only some of the listed statutes may have

been violated, Equilibre effectively admits that it does not have a full understanding of its own allegations. If even Equilibre is not sure what it is alleging, how are Defendants supposed to know?

Finally, Equilibre's negligence *per se* claim fails because it is duplicative of its breach of fiduciary duty claim. Indeed, the two claims arise from the "same facts, the same elements (duty of care, breach and damages) and seek[] the same relief." *In re Mundo Latino Mkt. Inc.*, 590 B.R. 610, 619 (Bankr. S.D.N.Y. 2018); *accord Bulgari v. Bulgari as Tr. of Anna Bulgari Fam. Tr. #1*, 2024 WL 3498781, at *31 (S.D.N.Y. July 22, 2024), *R&R adopted in relevant part* 2024 WL 4345580 (S.D.N.Y. Sept. 30, 2024). In particular, "a negligence claim will not stand where there is no independent duty of care apart from the trustee's fiduciary duty." *Bulgari*, 2024 WL 3498781, at *31.

Here, Equilibre's "negligence claim does not just overlap with [the] breach of fiduciary claim; it is fully encompassed by it." *Bulgari*, 2024 WL 3498781, at *31. The underlying conduct—vaguely alleged as it is—for the two claims is effectively identical (*see* Compl. ¶¶ 55–57, 77–78). Moreover, while the Complaint fails to allege any duty Waksal owed to Equilibre in support of its negligence claim, the only possible duty was his duty as a fiduciary. Because the negligence claim here is entirely encompassed by the fiduciary duty claim, the negligence claim must be dismissed. *Bulgari*, 2024 WL 3498781, at *31; *In re Mundo Latino Mkt.*, 590 B.R. at 619.

## C. Equilibre has not stated a claim for conversion against Graviton or Chen (Count V)

Equilibre's attempt to state a conversion claim against Graviton and Chen fails on multiple fronts. The Complaint alleges that Waksal "improperly took possession of Equilibre's intellectual property and held it out to be the sole and exclusive property of Graviton" (Compl. ¶ 100). Chen, in turn, is alleged to have "failed to exercise discretion and control to prevent the unlawful conversion of Equilibre's intellectual property" (*id.* ¶ 101).

To start, Equilibre's allegations regarding the purported conversion of its IP fail to allege that it was ever prevented from exercising control over that IP. "While New York courts have recognized that conversion can be predicated on the loss of intangible electronic data," the bedrock principle remains that a conversion claim requires "the exercise of unauthorized dominion and control *to the complete exclusion of the rightful possessor*." *Reis, Inc. v. Spring11 LLC*, 2016 WL 5390896, at *10 (S.D.N.Y. Sept. 26, 2016) (emphasis added). When, as here, a complaint does not show that the plaintiff was "deprived of the use" of the allegedly converted property, that complaint "does not state a conversion claim." *Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 160–61 (S.D.N.Y. 2025); *accord Transaero, Inc. v. Chappell*, 2014 WL 1783732, at *11 (E.D.N.Y. May 6, 2014).

These principles explain why courts generally find that IP such as trade secrets and other confidential, proprietary, and privileged information "are not amenable to claims for conversion." *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 630–31 (S.D.N.Y. 2014); *Transaero*, 2014 WL 1783732, at *11. Even if such information were misappropriated by another party, the rightful owner is not excluded from using it. Here, Equilibre never alleges otherwise. It claims in conclusory fashion that Graviton's actions "derogated Equilibre's possessory rights of that intellectual property" (Compl. ¶ 102). But nowhere does the Complaint allege that Equilibre was completely excluded from making use of its purported IP. This is fatal to its claim.

Also fatal to Equilibre's conversion claim is the vague and conclusory manner in which it is alleged. As stated above, the Complaint fails to give any details as to what IP Equilibre believes was converted here. Without any detail to suggest what, when, or how the conversion is supposed to have occurred, the Complaint presents "precisely the kind of conclusory allegations which are plainly insufficient to prevent a Rule 12(b)(6) dismissal." *Bloom v. U.S. Gov't*, 2003 WL

22327163, at *6 (S.D.N.Y. Oct. 10, 2003) (dismissing claim where the plaintiff failed to "put forth any facts regarding who took the information from him or how and when they did so"); *accord Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020) (dismissing "vague" allegations concerning misappropriation of trade secrets that did not apprise the defendants or the court with "sufficient particularity" of what was purported to have been taken).

Moreover, the conversion claim against Chen fails to allege any wrongdoing on her part. The allegations amount to no more than the fact that Chen was the chair of Graviton's board of directors and should have stopped Waksal from converting Equilibre's IP (Compl. ¶¶ 52, 103). But an "officer or director is not liable merely because of her office for the torts of other officers." *Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc.*, 2004 WL 2903745, at *3 (S.D.N.Y. Dec. 15, 2004), *as corrected* (Jan. 5, 2005). The Complaint never alleges any direct wrongdoing on Chen's part. It never alleges that Chen had any actual knowledge of wrongdoing on the part of others or how Chen obtained such knowledge. Chen is apparently being sued on the sole basis of her position with Graviton. That does not state a cognizable claim for conversion.

### D. Equilibre has not stated a claim for unjust enrichment against Graviton or Chen (Count VI)

Equilibre's unjust enrichment claim fails as an initial matter because it simply duplicates Equilibre's conversion claim. Under New York law, an "unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). Instead, such a claim is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* "If the plaintiff is simply restating a contract or tort claim, then unjust enrichment is not available." *Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016).

Here, Equilibre's unjust enrichment claim simply restates its conversion claim. Equilibre is candid about doing so, alleging that "Graviton's taking of and use of Equilibre's intellectual property conferred a measurable benefit upon Graviton and, thereby, Chen" (Compl. ¶ 107). Any unjust enrichment here is predicated on and duplicative of Equilibre's conversion claim. If Equilibre's conversion claim succeeds (it will not), "the unjust enrichment claim is duplicative"; and if the conversion claim is defective (it is) "an unjust enrichment claim cannot remedy the defects." *Corsello*, 18 N.Y.3d at 791. Either way, the "unjust enrichment claim should be dismissed." *Id.*

Apart from being duplicative, the Complaint's allegations are too conclusory to state a claim for unjust enrichment. "Vague or general allegations are insufficient to plead a claim for unjust enrichment." *Royal Host Realty*, 192 F. Supp. 3d at 357. The Complaint contains no specific allegations as to how Graviton or Chen have been unjustly enriched. Indeed, the Complaint refers simply to "Graviton," ignoring that the term is defined in the introductory paragraph of the Complaint to encompass four separate entities (Compl. at 1–2). The Complaint never alleges whether all four entities were unjustly enriched, or just a subset of the four. It offers no description of how Chen was personally enriched. The Complaint never alleges what IP was purportedly received. And while the Complaint claims that the IP "conferred a measurable benefit" on Graviton and Chen (Compl. ¶ 107), it never explains that measurement or attempts to quantify it.

Simply alleging that the defendants "received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment." *Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 680 (2d Dep't 2005). Equilibre alleges nothing more. Courts faced with similarly vague pleadings have not hesitated to dismiss unjust enrichment claims. *See, e.g.*, *Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 589 F. Supp. 3d 401,

421–22 (S.D.N.Y. 2022) (plaintiffs could not "rely on their general theory" that the improper transfer of business assets from one company to another unjustly enriched the defendants "[w]ithout more specific factual allegations"); *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 784 (S.D.N.Y. 2011) (allegation that defendants used the money in a "variety of unauthorized ways" was "too vague and conclusory to constitute a proper allegation" of unjust enrichment).

The allegations against Chen fail for the additional reason that she is not alleged to have received any direct benefit. To survive a motion to dismiss, Equilibre was required to allege a "specific and direct benefit necessary to support an unjust enrichment claim." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Where any benefit is only indirect, the claim must be dismissed. *Hudson Neurosurgery, PLLC v. UMR, Inc.*, 2023 WL 6311218, at *7 (S.D.N.Y. Sept. 28, 2023). Far from alleging that Chen benefitted directly, the Complaint states the opposite. Equilibre alleges that "Graviton's taking of and use of Equilibre's intellectual property conferred a measurable benefit upon Graviton and, thereby, Chen" (Compl. ¶ 107). Because any benefit to Chen flowed through Graviton—as expressly alleged in the Complaint—Chen did not receive any direct benefit. The claim against her must, therefore, be dismissed.

### III.    THE COURT LACKS PERSONAL JURISDICTION OVER GRAVITON B.V.

Independent of the various pleading deficiencies set out above, this Court lacks personal jurisdiction over defendant Graviton B.V., which is a foreign entity not doing business in this country.[7] Federal Rule 12(b)(2), as incorporated by Bankruptcy Rule 7012(b)(2), provides for dismissal of a case for lack of personal jurisdiction. To survive a motion under Federal Rule 12(b)(2), Equilibre must make a prima facie showing that jurisdiction exists. *See O'Neill v.*

---

[7] Although Graviton B.V. accepted service of process of the Adversary Complaint through undersigned counsel, *see* ECF No. 11, Graviton B.V. did so without consenting to personal jurisdiction.

*Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 673 (2d Cir. 2013). This "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* Equilibre has not—and cannot—do so.

First, Equilibre cannot establish that the Court has general jurisdiction over Graviton B.V. To establish general jurisdiction, the corporation's "affiliations with the State" must be "so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (cleaned up). But Graviton B.V. does not meet that standard. To the contrary, the Complaint alleges that the company is "organized and existing under and pursuant to the laws of the Netherlands" (Compl. ¶ 16). The truth goes further still. Graviton B.V. "is a holding company with no offices, employees, or property in the United States; is not registered to conduct business in the United States; and does not advertise, solicit or conduct any business in the United States" (DR Decl. ¶ 5). The company does not even receive revenue from the United States (*id.*). Because Graviton B.V. lacks any systematic connection to the United States, general jurisdiction does not exist.

Second, Equilibre cannot establish specific jurisdiction over Graviton B.V. When Graviton B.V. has effectively no involvement with business in the United States, it did not "purposefully avail" itself of the benefits and protections of U.S. law, and, therefore, this Court lacks personal jurisdiction over it. *Lehman Bros. Special Fin. Inc. v. Bank of Am. (In re Lehman Bros. Holdings, Inc., et al.)*, 535 B.R. 608, 622 (Bankr. S.D.N.Y. 2015). The allegations in the Complaint do not create a *prima facie* case of specific personal jurisdiction against Graviton B.V. Indeed, the Complaint has no substantive allegations about the company whatsoever. Thus, this Court should dismiss Graviton B.V. for lack of personal jurisdiction.

## IV. ALTERNATIVELY, THIS COURT SHOULD ABSTAIN FROM RULING ON THIS ACTION WHILE THE STATE COURT ACTION IS PENDING

Alternatively, to the extent that the Court does not dismiss Equilibre's claims outright based on the numerous deficiencies identified above, the Court should abstain and stay proceedings pending resolution of the State Court Action. Resolution of the IP-related claims in that proceeding will necessarily affect the viability of Equilibre's claims here.

As noted above, looking solely at the Complaint here, the allegedly transferred IP underlying Equilibre's claims for breach of fiduciary duty, negligence *per se*, conversion, and unjust enrichment is never specified. If Equilibre is to have any hope of succeeding in this case, it must identify what IP is at issue. In doing so, however, it will only run into further problems. Based on the pleadings in the State Court Action brought by Equilibre's successor in interest (and filed by the same law firm representing Equilibre here), it is all but certain that Equilibre seeks to make the ownership of the IP relating to ROCK2 inhibitors the issue in this case. To the extent that Equilibre so intends, it will simply make the argument for why this Court should abstain from hearing the matter until the State Court Action addressing the same question has been resolved.

All the Complaint's claims in this case depend (at least to some extent) on the assumption that Waksal and Graviton have misappropriated Equilibre's IP. But that exact issue will be directly resolved in the State Court Action. There, Equilibre's successor in interest asserts claims for declaratory judgment that it is the co-owner of the ROCK2 inhibitor IP (having purchased it from Equilibre) and that Graviton has inappropriately asserted sole ownership over the IP (JLA Decl. Ex. 2). Yet, the State Court Action seeks a judgment only as to the IP related to ROCK2 inhibitors. Resolution of that claim—which turns on state law contracts, including the SSA and other agreements—will necessarily determine whether Equilibre had any right to this IP. Because the premise underlying the claims in this action is that Equilibre co-owns the Gravition IP, Equilibre

cannot prevail in this case without first establishing that it owns the Graviton IP. If Equilibre did not have rights to Graviton's IP, there is nothing to have been converted and the purported "transfer" of the IP could not have constituted a breach of fiduciary duty. In that event, resolution of the ownership question—the issue currently being litigated in the State Court Action—will necessarily determine the predicate of action in this matter.[8]

When the predicate for this federal matter will be determined by a pending action in state court, this Court should abstain from issuing any rulings dependent on that predicate. By statute, the court "shall abstain from hearing" a proceeding "based upon a State law claim or State law cause of action" that is related to a bankruptcy case but does not arise under title 11 "if an action is commenced and can be timely adjudicated in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). This mandatory abstention is appropriate when "(1) the abstention motion was timely brought; (2) the action is based upon a state law claim; (3) the action is related to a bankruptcy proceeding, as opposed to arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code; (4) the sole federal jurisdiction for the action is Section 1334; (5) there is an action commenced in state court; and (6) the action is capable of being timely adjudicated in state court." *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002).

There can be no question that the criteria for abstention are satisfied here. The motion is timely when it is part of Defendants' first responsive filing in this case. The claims asserted in the Complaint all arise under state law and not the Bankruptcy Code. The sole basis for jurisdiction asserted in the Complaint is Section 1334 (Compl. ¶ 8). The State Court Action has been filed and litigation is already underway (JLA Decl. ¶¶ 4–5). And, finally, the State Court Action can be adjudicated in a timely manner. Indeed, the action has been assigned to the Commercial Division

---

[8] As a matter of fact and law, Equilibre does not own any of the Graviton IP related to ROCK2 inhibitors. But this Court does not need to resolve that question to dismiss the Complaint here given the litany of issues described above.

of New York's Supreme Court, where cases move on a fast-track basis. There are no grounds for reasonable dispute on any of these points. Thus, to the extent this Court does not dismiss the Complaint for the pleading deficiencies identified above, it should abstain from further action in the case until the State Court Action is resolved.

Even if abstention were not required here, this Court should still exercise its discretion to abstain from hearing the action "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1); *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002). The Complaint here raises state law claims, the predicate for which is best resolved in the pending State Court Action. Doing so promotes judicial efficiency, eliminates the possibility of courts reaching different conclusions on the same issue, and allows the New York State courts to resolve the crucial question of state law—the ownership of the IP at issue—in the first instance.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs'

Complaint with prejudice, or, in the alternative, stay the matter pending the resolution of the State

Court Action.

Dated: New York, New York
      July 21, 2025

Respectfully submitted,

**SCHLAM STONE & DOLAN LLP**

By:     */s/ Jeffrey M. Eilender*
Jeffrey M. Eilender
Jolene LaVigne-Albert
Joshua Kahane
John Moore
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212) 344-5400
Email: jeilender@schlamstone.com
Email: jlavignealbert@schlamstone.com
Email: jkahane@schlamstone.com
Email: jmoore@schlamstone.com

*Attorneys for Defendants Samuel
Waksal, Rui Wu, Graviton
Bioscience Corporation, Graviton
Bioscience Holding Corporation,
Graviton US Corp. (USA), Graviton
Bioscience B.V., and Bihua Chen*