**HERBERT SMITH FREHILLS KRAMER (US) LLP**
Paul H. Schoeman
Jonathan M. Wagner
Irene Weintraub
1177 Avenue of the Americas
New York, New York 10036
Telephone: 212-715-9100

*Attorneys for Defendants Maisonrouge and Simon*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>EQUILIBRE BIOPHARMACEUTICALS CORP.,<br><br>                Debtor. | Chapter 7<br><br>Case No. 23-12099 (PB) |
| GREGORY M. MESSER, Solely in His Capacity as Chapter 7 Trustee of the Estate of Equilibre Biopharmaceuticals Corp.,<br><br>                Plaintiff,<br><br>     v.<br><br>SAMUEL WAKSAL, individually, as the former Chairperson, Chief Executive Officer, and President of Equilibre Biopharmaceuticals Corp. Chairperson, and Chief Executive Officer and President of Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp. (USA), and Graviton Bioscience B.V., FRANCOIS MAISONROUGE, RUI WU, PETER SIMON, GRAVITON BIOSCIENCE CORPORATION, GRAVITON BIOSCIENCE HOLDING CORPORATION, GRAVITON US CORP. (USA), GRAVITON BIOSCIENCE B.V., BIHUA CHEN,<br><br>                Defendants. | Adv. Proc. No. 25-01087 (PB) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS MAISONROUGE AND SIMON'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities ................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 3

    A.  Breach of Fiduciary Duty (Count three) ..................................................... 4

    B.  Aiding and Abetting (Count four).................................................................. 5

    C.  Tortious Interference (Count eight) ............................................................. 5

ARGUMENT ............................................................................................................... 7

   I.   DEFENDANTS ARE EXCULPATED FROM ANY DUTY OF CARE CLAIM ............ 8

   II.  THE FAC DOES NOT STATE A DUTY OF LOYALTY CLAIM ................................. 9

    A.  Failure to Comply With Rules 8(a) and 9(b) ................................................ 9

    B.  Failure to Plead a *Caremark* Oversight Claim............................................. 13

   III. THE FAC DOES NOT STATE A CLAIM FOR AIDING AND ABETTING
        BREACH OF FIDUCIARY DUTY. ................................................................. 14

   IV. THE FAC DOES NOT STATE A CLAIM FOR TORTIOUS INTERFERENCE
        WITH PROSPECTIVE ECONOMIC ADVANTAGE ................................... 15

    A.  No Interference With Business Relations With Any Third Party.............................. 16

    B.  No Causation.................................................................................................. 16

    C.  No Wrongful Means ...................................................................................... 17

   V.  THE COURT SHOULD DENY LEAVE TO REPLEAD ................................................ 21

CONCLUSION............................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 1031 Tax Grp., LLC,*
  420 B.R. 178 (Bankr. S.D.N.Y. 2009) ......................................................................7

*In re AgFeed USA, LLC,*
  558 B.R. 116 (Bankr. D. Del. 2016) ......................................................................12

*Alexander v. Bd. of Educ.,*
  648 F. App'x 118 (2d Cir. 2016) ......................................................................6 n.1

*In re Ampal-Am. Israel Corp.,*
  543 B.R. 464 (Bankr. S.D.N.Y. 2016) ..................................................................8

*In re Aramid Ent. Fund Ltd.,*
  664 B.R. 9 (Bankr. S.D.N.Y. 2024) ......................................................................10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..............................................................................................9, 10

*Boehner v. Heise,*
  734 F. Supp. 2d 389 (S.D.N.Y. 2010) ................................................................19

*Cambridge Cap. LLC v. Ruby Has LLC,*
  565 F. Supp. 3d 420 (S.D.N.Y. 2021) ................................................................17

*In re Caremark Int'l Inc. Derivative Litig.,*
  698 A.2d 959 (Del Ch. 1996) ......................................................................1, 2, 13

*City of Birmingham Ret. & Relief Sys. v. Good.,*
  177 A.3d 47 (Del. 2017) ......................................................................................1, 13

*Clark v. Davenport,*
  2019 WL 3230928 (Del. Ch. July 18, 2019) ......................................................12

*Converged Compliance Sols., Inc. v. XOP Networks, Inc.,*
  2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024) ..................................................11

*In re Cornerstone Therapeutics Inc., Stockholder Litig.,*
  115 A.3d 1173 (Del. 2015) ......................................................................................9

*Erdman v. Victor*,
    2021 WL 2481254 (S.D.N.Y. June 17, 2021) .......................................................19

*Exec. Trim Constr., Inc. v. Gross*,
    525 F. Supp. 3d 357 (N.D.N.Y. 2021) .............................................................19, 20

*Friedman v. Endo Int'l PLC*,
    2018 WL 446189 (S.D.N.Y. Jan. 16, 2018), *aff'd*, 771 F. App'x 494 (2d Cir.
    2019) ............................................................................................................................21

*In re Hydrogen, L.L.C.*,
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) ...................................................................10

*ICD Cap., LLC v. CodeSmart Holdings, Inc.*,
    2020 WL 815733 (S.D.N.Y. Feb. 19, 2020) ..........................................................11

*Krause v. Forex Exch. Mkt., Inc.*,
    356 F. Supp. 2d 332 (S.D.N.Y. 2005).....................................................................15

*La. Mun. Police Emps. Ret. Sys. v. Blankfein*,
    2009 WL 1422868 (S.D.N.Y. May 19, 2009) ..........................................................8

*LaNasa v. Stiene*,
    731 F. Supp. 3d 403 (E.D.N.Y. 2024), *aff'd*, 2025 WL 893456 (2d Cir. Mar.
    24, 2025) .....................................................................................................................18

*In re M. Fabrikant & Sons, Inc.*,
    447 B.R. 170 (Bankr. S.D.N.Y. 2011), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012),
    *aff'd*, 541 F. App'x 55 (2d Cir. 2013).............................................................21, 22

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ..............................................................................................12

*Medcalf v. Walsh*,
    938 F. Supp. 2d 478 (S.D.N.Y. 2013)......................................................................20

*In re Mindbody, Inc., S'holder Litig.*,
    332 A.3d 349 (Del. 2024) ..........................................................................................15

*Nuveen Servs., LLC v. Fuller*,
    2024 WL 4264864 (S.D.N.Y. Aug. 1, 2024) .........................................................10

*Oxyn Telecomms., Inc. v. Onse Telecom*,
    2003 WL 22271224 (S.D.N.Y. Sept. 30, 2003)..............................................16, 17

*Pereira v. Farace*,
    413 F.3d 330 (2d Cir. 2005), *cert. denied*, 547 U.S. 1147 (2006)............................8

*Pickett v. Gorevic*,
    2021 WL 4927061 (S.D.N.Y. Mar. 26, 2021) ...............................................13, 14

*Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*,
    2013 WL 12618658 (S.D.N.Y. Oct. 22, 2013), *opinion clarified*, 2014 WL
    13111005 (S.D.N.Y. Feb. 3, 2014) .........................................................................21

*Premium Mortg. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009)....................................................................................17

*Primiani v. Vintage 185 Inc.*,
    2019 WL 486087 (E.D.N.Y. Feb. 6, 2019)...............................................................11

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)......................................................................................7

*Scholastic, Inc. v. Stouffer*,
    124 F. Supp. 2d 836 (S.D.N.Y. 2000), *other holding abrogated on other
    grounds by*, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23
    (2003) ......................................................................................................................17

*SparBar Ltd. v. Lam*,
    2024 WL 5696616 (E.D.N.Y. Jan. 26, 2024) ..........................................18, 20, 21

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ........................................................................................13

*Szulik v. Tagliaferri*,
    966 F. Supp. 2d 339 (S.D.N.Y. 2013)........................................................................7

*Tasini v. AOL, Inc.*,
    851 F. Supp. 2d 734 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012).......21

*Thai v. Cayre Grp., Ltd.*,
    726 F. Supp. 2d 323 (S.D.N.Y. 2010)......................................................................19

*Twelve Inches Around Corp. v. Cisco Sys., Inc.*,
    2009 WL 928077 (S.D.N.Y. Mar. 12, 2009) ...........................................................16

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
    455 F. App'x 102 (2d Cir. 2012) ................................................................16, 17, 18

*Walton v. Morgan Stanley & Co. Inc.*,
    623 F.2d 796 (2d Cir. 1980)......................................................................................9

*Williams v. Buffalo Pub. Schs.*,
    758 F. App'x 59 (2d Cir. 2018) ...............................................................................20

**Statutes**

8 Del. C. § 102(b)(7)........................................................................................................8

**Rules**

Fed. R. Bankr. P. 7012(b) ...............................................................................................1

Fed. R. Civ. P. 8(a) ................................................................................................ *passim*

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 7

Defendants Francois Maisonrouge and Peter Simon respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6), applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), to dismiss the adversary complaint filed by Gregory M. Messer, Trustee of the Equilibre Biopharmaceuticals Corp.

## PRELIMINARY STATEMENT

The Trustee filed an initial complaint in April 2025. Messrs. Maisonrouge and Simon moved to dismiss, citing the Trustee's failure to meet basic pleading standards or describe how Messrs. Maisonrouge and Simon supposedly aggrieved Equilibre and its stakeholders. Recognizing these deficiencies, rather than oppose the motion the Trustee filed an amended complaint—the "FAC." As we show here, the FAC does not come close to curing the pleading deficiencies pervading the prior complaint.

The FAC contends that Messrs. Maisonrouge and Simon, as former members of the Equilibre Board of Directors, breached their fiduciary duties of care and loyalty by assisting Defendant Samuel Waksal in his alleged conversion of Equilibre's intellectual property, and concealing other misconduct by Mr. Waksal. Despite two pleading opportunities, the Trustee still does not specify how Messrs. Maisonrouge and Simon supposedly played any role in Mr. Waksal's alleged conversion. Nor does the new complaint provide any details as to how they concealed Mr. Waksal's misconduct.

Reading the FAC in the most favorable light, the Trustee's fiduciary duty claim pleads an alleged oversight failure by independent, disinterested directors—what is called a *Caremark* claim. *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del Ch. 1996). A *Caremark* claim is "'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *City of Birmingham Ret. & Relief Sys. v. Good.*, 177 A.3d 47, 55 (Del. 2017) (citation omitted). The FAC falls far short of meeting the high threshold for such a claim. Beyond

conclusory allegations of Messrs. Maisonrouge's and Simon's "unintentional negligent oversight" (FAC ¶ 68), the FAC does not plead specific facts demonstrating a deliberate failure to implement controls, nor a conscious failure to monitor Equilibre's operations—as required for a *Caremark* claim.

The Trustee's new pleading adds one additional claim—for tortious interference with prospective economic advantage—that is likewise defective as a matter of law. As the basis for the claim, the FAC alleges that Messrs. Maisonrouge and Simon defamed Equilibre to one of the Company's investors. However, the FAC does not allege any facts that plausibly support a defamation claim. On that basis alone—although there are several other pleading deficiencies— the Court should dismiss the claim. Specifically, the Trustee's defamation allegation is based on a single supposed email—that should have been but was not attached to the FAC—that, the Trustee now concedes, (i) was not sent to any Equilibre investor, and (ii) did not contain any false statements.

In short, and as we demonstrate in greater detail below, none of the three claims against Messrs. Maisonrouge and Simon—for breach of fiduciary duty (count three), aiding and abetting breach of fiduciary duty (count four), or tortious interference with prospective economic advantage (count eight)—states a claim:

*First*, Equilibre's Certificate of Incorporation exculpates Board members from any breach of duty of care claim.

*Second*, the FAC's conclusory allegations are insufficiently particularized and otherwise do not support the Trustee's claims for breach of duties of loyalty or oversight, nor aiding-and- abetting liability.

- 2 -

*Third*, the FAC does not support a claim for tortious interference with prospective economic advantage. The FAC does not plausibly allege facts demonstrating that Messrs. Maisonrouge or Simon made defamatory comments or interfered with Equilibre investors.

*Fourth*, because the Trustee has now twice tried and failed to state a claim against Messrs. Maisonrouge and Simon, and because any further amendment would be futile, the time has come for the Court to dismiss with prejudice and without leave to replead.

## FACTUAL BACKGROUND

In addition to the facts set out in the motion to dismiss filed by Defendants Samuel Waksal, Rui Wu, the Graviton entities and Bihua Chen—the "Graviton Defendants"—the following facts alleged in the FAC, accepted as true solely for the purposes of this motion, bear on the claims against Messrs. Maisonrouge and Simon.

Messrs. Maisonrouge and Simon were members of the Equilibre Board of Directors. Each sat on multiple Board committees, including the Audit Committee. FAC ¶¶ 17, 19. The FAC does not make any allegation that they were anything other than disinterested and independent directors, or that they had any management role at Equilibre.

The Trustee alleges that Mr. Waksal, Equilibre's Chair, CEO and President, (*id.* ¶ 26), imported medication unapproved for human consumption into the United States and administered that medication to a child. *Id.* ¶ 3. The FAC alleges that Mr. Maisonrouge "endorsed" Mr. Waksal's "bad acts," (*id.* ¶ 66), but provides no particulars. The FAC does not otherwise plead that Messrs. Maisonrouge or Simon assisted in this activity.

In fact, the FAC itself highlights the diligence with which Messrs. Maisonrouge and Simon, as Equilibre directors and members of the Audit Committee, investigated Mr. Waksal and took prompt action. In March 2022, following a report of Mr. Waksal's conduct, the Audit Committee opened an internal investigation and hired independent outside counsel at Cravath, Swaine &

- 3 -

Moore LLP and McDermott Will & Emery LLP.  *Id.* ¶¶ 46-47.  Based on that investigation, about

two months later the Audit Committee recommended that the Board terminate Mr. Waksal, (*id.*

¶ 53), and Mr. Waksal then resigned from Equilibre.  *Id.* ¶ 54.  The FAC does not allege that the

investigation was deficient in any way.

###    A.    Breach of Fiduciary Duty (Count three)

The nub of the fiduciary duty claim against Messrs. Maisonrouge and Simon is that they

facilitated Mr. Waksal's subsequent diversion of Equilibre's intellectual property to Graviton, Mr.

Waksal's other company:

- "Waksal, with the assistance of the other Defendants, . . . transferred Equilibre's proprietary research, technology, and scientific advancements to Graviton."  *Id.* ¶ 54.

- "Upon information and belief, the Defendants Maisonrouge, Wu and Simon failed to take any corrective measures and their intentional or unintentional negligent oversight materially assisted Waksal in his ability to breach his fiduciary duties and his later misconduct to convert intellectual property to Graviton and interfere with Equilibre's investment opportunities." *Id.* ¶ 68.

- "Upon information and belief, Defendant Waksal, with the knowing support and active concealment of Defendants Maisonrouge, Wu, and Simon, orchestrated a sustained campaign of self-dealing, conversion, and obstruction to the detriment of Equilibre and its stakeholders.  Among the most egregious acts, Waksal converted Equilibre's confidential research, preclinical data, and intellectual property for the benefit of Graviton . . . ."  *Id.* ¶ 73.

- "Rather than adhering to their fiduciary duties, Defendants Maisonrouge, Wu and Simon aided Waksal by allowing him to divert Equilibre's assets and resources to Graviton, failing to intervene in his misappropriation of corporation opportunities, and covering up his misconduct despite clear evidence of regulatory violations and financial mismanagement." *Id.* ¶ 122.

The conclusory phrases in these boilerplate allegations are not accompanied by any detail

concerning Messrs. Maisonrouge and Simon's role in Mr. Waksal's purported misconduct, nor

any specifics concerning any oversight failure.

The FAC also includes an assortment of ancillary and head-scratching allegations—all

without factual support.  The pleading alleges among other things that Messrs. Maisonrouge and

Simon (i) "breached their fiduciary and legal obligations by tipping off Waksal to government subpoenas served on the Company," and (ii) "knowingly permitted" Mr. Waksal to "conduct[] secret Board and committee meetings, where material decisions regarding his compensation were purportedly made." *Id.* ¶¶ 75, 77. Once again, however, the Trustee does not plead any facts supporting these allegations. Nor does the pleading explain how these alleged events, if they even occurred, harmed Equilibre.

B.    Aiding and Abetting (Count four)

The Trustee's aiding and abetting claim is predicated on these same deficient allegations, which are otherwise devoid of factual support. According to the FAC, "Defendants . . . actively facilitated, concealed, and participated in [Mr. Waksal's] breach[] of fiduciary duty" and "aided Waksal by allowing him to divert Equilibre's assets and resources to Graviton, failing to intervene in his misappropriation of corporate opportunities, and covering up his misconduct despite clear evidence of regulatory violations and financial mismanagement." *Id.* ¶¶ 129-30. Again, beyond the rote language, nowhere does the pleading particularize Messrs. Maisonrouge and Simon's role in any purported theft.

C.    Tortious Interference (Count eight)

The FAC adds one new factual allegation and claim not contained in the initial complaint: that Messrs. Maisonrouge and Simon "disseminat[ed] defamatory statements about Equilibre" and interfered with the business relationship between Equilibre and its investor Alexandria Real Estate or "ARE." *Id.* ¶¶ 81, 154. Consistent with its other pleading failures, the FAC does not particularize any defamatory conduct, and merely alleges that "Waksal and Simon, on Simon and Maisonrouge's behalf," sent an email on April 24, 2023 "with the intent to inform [ARE] that Equilibre intended on defaulting on $3.6 million in debt and that Equilibre was being 'mismanaged.'" *Id.* ¶ 60.

After the Trustee filed the FAC, counsel to Messrs. Maisonrouge and Simon requested from the Trustee's counsel the email to ARE referenced in—and which should have been attached to—the new pleading. The Trustee's counsel initially responded that he would "endeavor" to provide the email. *See* Declaration of Jonathan M. Wagner, Esq., Exh. A (September 5, 2025 email from Jason A. Stewart). After counsel pressed further, and even though the FAC quotes the email, (*see* FAC ¶ 60), Trustee's counsel ultimately conceded that "we are not presently in possession of the email." Wagner Decl., Exh. A. Instead, Trustee's counsel purported to supply "additional clarifying information regarding the email." Now, according to Trustee's counsel, the email was *not* sent to ARE, as the pleading suggested, but rather to "a former business associate of Waksal" named "Joel" who had no stake in Equilibre. *Id.*[1]

Apart from the April 24, 2023 email which was not sent to Equilibre investors, the FAC does not specify any instance of allegedly defamatory conduct or interference with Equilibre investors.

The Trustee's games-playing with respect to this phantom email is emblematic of its entire case.

And despite being the second bite at the apple, the FAC alleges nothing concrete and specific that Messrs. Maisonrouge or Simon actually did that could make them liable for causing harm to Equilibre.

---

[1] The Court may properly consider these facts, which are "either incorporated by reference in or [] integral to the complaint." *Alexander v. Bd. of Educ.*, 648 F. App'x 118, 120 n.2 (2d Cir. 2016) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (explaining that a complaint is "deemed to include . . . statements or documents incorporated in it by reference," as well as any document not incorporated "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint") (internal quotations and citation omitted)).

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff's factual allegations must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Under Fed. R. Civ. P. 8(a), a complaint must provide sufficient detail to inform a defendant of the nature of the plaintiff's claims. And when a breach of fiduciary duty claim is based on alleged fraudulent conduct, as is the case here, *see*, *e.g.*, FAC ¶¶ 63, 66, 73, 129, 154 (alleging "active concealment" by Messrs. Maisonrouge and Simon), the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply. *See Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 358 (S.D.N.Y. 2013). Likewise, "[t]o the extent that the alleged fiduciary breach involves fraud, the plaintiff must also plead the aiding and abetting claim with particularity pursuant to [Rule] 9(b)." *In re 1031 Tax Grp., LLC*, 420 B.R. 178, 191 n.3 (Bankr. S.D.N.Y. 2009). This particularity requirement "serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing . . . ." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (internal quotations omitted) (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

The FAC falls well short of meeting these basic pleading standards.

*First*, the Trustee cannot sustain a duty of care claim—even were one adequately pleaded—because Equilibre's Certificate of Incorporation exculpates Messrs. Maisonrouge and Simon from duty of care liability.

*Second*, as for the Trustee's duty of loyalty and oversight claims, while the FAC alleges that Messrs. Maisonrouge and Simon assisted or knowingly permitted the conversion of Equilibre's intellectual property, the pleading does not allege any facts to support these boilerplate allegations and otherwise does not state a claim.

*Third*, the FAC's claim that Messrs. Maisonrouge and Simon tortiously interfered with Equilibre's business opportunities by defaming the Company to investors is unsupported by any facts meeting the elements of defamation.

## I.    DEFENDANTS ARE EXCULPATED FROM ANY DUTY OF CARE CLAIM

To the extent the FAC alleges that Messrs. Maisonrouge and Simon breached their fiduciary duties of care owed to the Company, *see* FAC ¶ 120, that claim should be dismissed for the simple reason that it is legally barred under 8 Del. C. § 102(b)(7).  This provision permits Delaware corporations to exculpate directors from monetary liability for breaches of duty of care. The Certificate of Incorporation of Equilibre, a Delaware corporation, includes an exculpation clause, providing that "[t]o the fullest extent permitted by the DGCL [Delaware General Corporation Law]. . . a director of this corporation shall not be personally liable . . . for breach of fiduciary duty as a director."  Wagner Decl., Exh. B (Equilibre Cert. of Incorporation) at Art. V.

Courts in our Circuit "routinely take judicial notice of exculpation provisions in certificates of incorporation on motions to dismiss."  *In re Ampal-Am. Israel Corp.*, 543 B.R. 464, 472-73 (Bankr. S.D.N.Y. 2016) (collecting cases).  In turn, it is *de rigueur* for Courts to dismiss duty of care claims against directors of Delaware corporations when—as here—the certificate of incorporation contains an exculpation provision.  *See Pereira v. Farace*, 413 F.3d 330, 342 (2d Cir. 2005), *cert. denied*, 547 U.S. 1147 (2006); *see also La. Mun. Police Emps. Ret. Sys. v. Blankfein*, 2009 WL 1422868, at *7 (S.D.N.Y. May 19, 2009) (judicially noticing exculpation provision; director defendants could be liable only for breach of duty of loyalty and good faith).

That leaves the Trustee's duty of loyalty claim, as well as the tortious interference claim—all legally defective for the reasons set forth below.

## II.    THE FAC DOES NOT STATE A DUTY OF LOYALTY CLAIM

To state a duty of loyalty claim under applicable Delaware law, *see Walton v. Morgan Stanley & Co. Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980) (state of incorporation governs substantive claim of breach of fiduciary duty), a plaintiff must plead "facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom [she] could not be presumed to act independently, or acted in bad faith." *In re Cornerstone Therapeutics Inc., Stockholder Litig.*, 115 A.3d 1173, 1179-80 (Del. 2015).  The FAC does not plead any plausible facts supporting a rational inference that Messrs. Maisonrouge and Simon—independent and disinterested directors—acted in self-interest or engaged in self-dealing.  Without those required allegations, the FAC runs afoul of both Rules 8(a) and 9(b), failing to "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests," so that the defendant may properly defend against the lawsuit. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

### A.    Failure to Comply With Rules 8(a) and 9(b)

The FAC alleges "[u]pon information and belief" that Messrs. Maisonrouge and Simon engaged in self-dealing, assisted Mr. Waksal with the purported conversion of Equilibre's intellectual property, and otherwise breached their fiduciary duties.  FAC ¶ 73.  Yet the pleading does not offer any facts supporting a rational inference that these defendants engaged in such misconduct.

The key allegation against Messrs. Maisonrouge and Simon is that "[Mr.] Waksal, with the assistance of the other Defendants . . . transferred Equilibre's proprietary research," (*id.* ¶ 54), and Mr. "Waksal, with the knowing support and active concealment of Defendants Maisonrouge, Wu

and Simon . . . converted Equilibre's . . . intellectual property" for the benefit of Mr. Waksal's company, Graviton. *Id.* ¶ 73. Critically, however, the pleading does not articulate any particulars as to what actions Messrs. Maisonrouge and Simon took and how they allegedly assisted in that transfer or even particularize the intellectual property at issue. *See In re Aramid Ent. Fund Ltd.*, 664 B.R. 9, 69 (Bankr. S.D.N.Y. 2024) (dismissing complaint that "fail[s] to allege when and where [defendants] made any actionable statement" in breach of their duties of loyalty).[2]

Boilerplate allegations of this sort do not meet the notice-pleading requirements of Rule 8(a)—and thus cannot support a claim for breach of duty of loyalty. "Vague and general allegations" about "certain unspecified transactions . . . cannot form the factual basis for an alleged failure on the part of Defendants to observe their fiduciary duty, as the 'circumstances, occurrences, and events' required to be alleged under Federal Rule of Civil Procedure 8(a) are entirely absent." *In re Hydrogen, L.L.C.*, 431 B.R. 337, 348 (Bankr. S.D.N.Y. 2010) (dismissing complaint that alleged "in the absence of supporting facts" that defendants increased debtor's spending, saddled it with debt, and paid themselves excessive compensation, and "allege[d] [only] in a conclusory fashion" that defendants acted in a reckless or grossly negligent manner) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 n.3 (2007)). *See also Nuveen Servs., LLC v. Fuller*, 2024 WL 4264864, at *14-15 (S.D.N.Y. Aug. 1, 2024) (dismissing duty of loyalty claim; complaint was "devoid of any factual allegations suggesting that [defendant] . . . usurp[ed] a business opportunity, profit[ed] for himself, or cause[d] any financial detriment to [the

---

[2]    To the extent the breach of fiduciary duty claim is premised on the alleged conversion of intellectual property relating to the development of Rock2 inhibitors, the claim fails for the additional reason that there was no such conversion, as that intellectual property rightfully belongs to Graviton. *See* Graviton Defendants' motion to dismiss.

company]"); *Primiani v. Vintage 185 Inc.*, 2019 WL 486087, at *4 (E.D.N.Y. Feb. 6, 2019)

(dismissing duty of loyalty claim; pleadings were "devoid of facts demonstrating self-dealing").

As an additional pleading obstacle, and in the unlikely event that the FAC satisfies Rule

8(a), because the allegations against Messrs. Maisonrouge and Simon sound in fraud, *see, e.g.*,

FAC ¶¶ 63, 66, 73, 122 & 129, the FAC must meet the heightened pleading requirements of Rule

9(b). *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, 2024 WL 4665114, at *20

(S.D.N.Y. Sept. 25, 2024) ("A breach of fiduciary duty claim may sound in fraud where the

underlying conduct alleged has been fraud or the breach is closely linked with fraudulent

behavior") (citations omitted).  The FAC does not allege with particularity the circumstances

surrounding the purported assistance in conversion of corporate assets and self-dealing.  Nor does

the FAC plead facts giving rise to a strong inference of fraudulent intent.

Against this backdrop, the Trustee's fraud-infused fiduciary duty count falls well within

the ambit of cases dismissing fiduciary duty claims on Rule 9(b) grounds.  *See id.* (allegations that

defendant worked for other companies while working for plaintiff were insufficient to demonstrate

conflict of interest or self-dealing for a fiduciary duty claim; "Plaintiff's sparse allegations fail to

plead a knowing breach of fiduciary duty with the requisite particularity required under Rule

9(b)"); *see also ICD Cap., LLC v. CodeSmart Holdings, Inc.,* 2020 WL 815733, at *8 (S.D.N.Y.

Feb. 19, 2020) (granting motion to dismiss; complaint failed to "articulat[e] how [defendant] did

not act in good faith, or where and when she disregarded her obligation to use due care") (citation

omitted) (emphasis in original).

The allegations in the FAC beyond the alleged theft of intellectual property suffer from the

same legal defect.  For example, the FAC alleges that Messrs. Maisonrouge and Simon "relay[ed]

defamatory statements to key Equilibre investors."  FAC ¶ 81.  However, as discussed below (*see*

pages 18-20), the FAC does not particularize any allegedly defamatory conduct.  Among other

things, the Trustee does not (i) identify any statements actually made to Equilibre investors, (ii)

allege that any such statements were false, and (iii) allege resulting damages.  *See infra* pp. 18-20.

Notably, defamation cannot form the basis of a fiduciary duty claim unless the fiduciary

deliberately disseminates false information to investors that results in corporate injury.  *See*

*Malone v. Brincat*, 722 A.2d 5, 9-10 (Del. 1998) (breach of fiduciary duty claim requires that

directors "knowingly disseminate false information…publicly or directly with shareholders," that

"results in corporate injury").  The required level of proof for such a claim is "similar to, but even

more stringent than, the level of scienter required for common law fraud," and requires a showing

of "knowing misconduct."  *Clark v. Davenport*, 2019 WL 3230928, at *9 (Del. Ch. July 18, 2019)

(internal quotations and citation omitted); *see also In re AgFeed USA, LLC*, 558 B.R. 116, 125-26

(Bankr. D. Del. 2016) (dismissing fiduciary duty claim; complaint did not allege defendant had

actual knowledge his statements were false or made the statements with the requisite scienter).

The FAC does not contain any such allegations.

The FAC goes on to allege, based on nothing more than "information and belief," that

Messrs. Maisonrouge and Simon "were motivated by their expectations to receive personal

benefits from their complicity in Waksal's misconduct."  Yet the pleading does not provide factual

detail to buttress this otherwise conclusory charge.  FAC ¶ 123.  Likewise, the FAC's allegation

that Messrs. Maisonrouge and Simon "tipp[ed] off [Mr.] Waksal to government subpoenas served

on the Company," (*id.* ¶ 75), unsupported by any details concerning the nature of that government

investigation or the circumstances, timing, or other context in which these defendants alerted Mr.

Waksal of a supposed investigation, is similarly too vague to support a breach of fiduciary duty

claim.  And critically, there is no explanation of how these supposed events harmed Equilibre.

B.    Failure to Plead a *Caremark* Oversight Claim

Beyond the Trustee's failure to meet bedrock pleading requirements—alone a basis to dismiss—the Trustee's fiduciary duty claim faces another insurmountable legal hurdle.  The Trustee's attempts to plead an oversight failure by independent, disinterested directors—known as a *Caremark* claim—a type of claim that is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *City of Birmingham Ret.*, 177 A.3d at 55 (citation omitted).  To state a *Caremark* claim, a plaintiff must plausibly allege facts demonstrating that Messrs. Maisonrouge and Simon (i) "utterly failed to implement any reporting or information system or controls"; or (ii) "having implemented such a system or controls, consciously failed to monitor or oversee its operations." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  Even overlooking the failure to comply with Rules 8(a) and 9(b), and giving the FAC far more than its due, the new pleading does not come close to stating an actionable oversight claim.

The FAC's bare allegations that Messrs. Maisonrouge and Simon's supposed "negligent oversight" caused the conversion of Equilibre's assets, or that they "knowing[ly] support[ed]" and "fail[ed] to intervene" in the conversion are unsupported by specific facts—let alone facts that would demonstrate a conscious disregard of their obligations as required to state a *Caremark* claim. FAC ¶¶ 68, 73, 122, 129.  Similarly, the FAC's unspecified allegation that Messrs. Maisonrouge and Simon "permitted" Mr. Waksal to "conduct[] secret Board and committee meetings," (*id.* ¶ 77), without more, cannot form the basis of a *Caremark* claim, as the Trustee does not specify a single fact about the purported meetings.  Nor would such conduct demonstrate a "conscious[] fail[ure] to monitor or oversee [Company] operations," even were it adequately pleaded. *See Pickett v. Gorevic*, 2021 WL 4927061, at *21 (S.D.N.Y. Mar. 26, 2021) (dismissing *Caremark* claim; allegations that the board "tolerated and failed to rectify a[n improper] corporate culture," "took no remedial action despite internal control deficiencies that permitted [] enduring

- 13 -

misconduct," and "abdicated its oversight role" were insufficient to satisfy "the stringent standard" for conscious failure to oversee operations).

* * *

At bottom, the only concrete factual allegations in the FAC that concern Messrs. Maisonrouge and Simon suggest that they properly exercised their fiduciary duties. As members of the Equilibre Board's Audit Committee, in March 2022 they opened an investigation into Mr. Waksal in response to reports of misconduct, and hired independent and respected outside counsel to assist with their investigation. *See* FAC ¶¶ 46-47. And in May 2022, when that investigation concluded, they recommended that the Company terminate Mr. Waksal, who in turn resigned. *Id.* ¶ 53.

In short, the Trustee's pleading is far removed from any viable fiduciary duty claim against Messrs. Maisonrouge and Simon, and should be dismissed.

## III.    THE FAC DOES NOT STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY.

To state a claim for aiding and abetting—the Trustee's fourth claim—the FAC must allege: (i) the existence of a fiduciary relationship; (ii) a breach of the fiduciary's duty; and (iii) knowing participation in that breach. *Electric Last Mile Sols., Inc. Stockholder Litig.*, 2024 WL 223195, at *2 (Del. Ch. Jan. 22, 2024).

At the threshold, the aiding and abetting claim should be dismissed for the reasons set forth in the Graviton Defendants' concurrently-filed motion to dismiss, demonstrating that the Trustee has not stated a claim for Mr. Waksal's underlying breach of fiduciary duty. If the fiduciary duty claim against the primary actor fails, then any aiding and abetting claim cannot stand. *Id.*

Beyond that legal obstacle, the Trustee's claim that Messrs. Maisonrouge and Simon aided and abetted a breach of fiduciary duty is predicated on the same core facts and suffers from the

same defects as the substantive fiduciary duty claim.  *See* pages 9-13 above.  The FAC does not allege plausible or particularized facts supporting the claim that Messrs. Maisonrouge and Simon participated in Mr. Waksal's alleged self-dealing and conversion, let alone knowingly participated in such conduct—as required to establish their liability.

Likewise, the conclusory assertion that "as members of Equilibre's Board of Directors . . . each had actual knowledge of Waksal's misconduct," (FAC ¶ 129), is insufficient to plead the required element of Messrs. Maisonrouge and Simon's actual knowledge of the underlying breach.  *See Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 339 (S.D.N.Y. 2005) ("conclusory" and "sparse" allegation that defendant "knew" of the underlying misconduct, with "no factual basis [] given for this assertion" is not sufficient to survive a motion to dismiss).

The FAC is also missing any allegation that Messrs. Maisonrouge or Simon had knowledge that their conduct was improper—another show-stopper, as recent Delaware law decisions make clear.  *See In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 390-91 (Del. 2024) (knowledge element of aiding and abetting claim requires specific facts demonstrating that "an aider and abettor know that the *primary party's* conduct constitutes a breach," and as well, "'that *its own* conduct regarding the breach was legally improper'") (citation omitted).

Lacking these required particulars, the FAC does not state an aiding and abetting claim against Messrs. Maisonrouge or Simon.

## IV.   THE FAC DOES NOT STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

The Trustee's final claim against Messrs. Maisonrouge and Simon, for tortious interference with prospective economic advantage—is likewise legally defective.

To state such a claim, a plaintiff must plead that (i) it had business relations with a third party, (ii) the defendant interfered with those business relations, (iii) the defendant acted for a

wrongful purpose or used dishonest, improper means, and (iv) the defendant's acts caused injury to the business relationship. *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105 (2d Cir. 2012). The FAC does not properly plead these elements.

A.    No Interference With Business Relations With Any Third Party

Notwithstanding his efforts to obfuscate, the Trustee does not—and cannot—allege that Equilibre had a business relationship with the individual who received the supposedly offending April 2023 email upon which the Trustee predicates this claim.

As Trustee's counsel has now admitted, Messrs. Maisonrouge and Simon did not contact ARE executives or any other Equilibre investors. *See* Wagner Decl., Exh. A. Rather, the Trustee's new pleading omits that the email in question was sent to a *non-investor* who had no stake in Equilibre's performance or management. *Id.* The FAC does not allege that Equilibre had a business relationship with that party, let alone that Messrs. Maisonrouge and Simon interfered with any business relationship. *See Twelve Inches Around Corp. v. Cisco Sys., Inc.*, 2009 WL 928077, at *6 (S.D.N.Y. Mar. 12, 2009) (tortious interference claim dismissed; "all of the conduct alleged is directed at Plaintiff or its [internet service provider]," not the third parties whose business relationship with plaintiff was allegedly interfered with); *Oxyn Telecomms., Inc. v. Onse Telecom*, 2003 WL 22271224, at *5-6 (S.D.N.Y. Sept. 30, 2003) ("the defendant's activities must be directed at the third party and must convince the third party not to enter into a business relationship with the plaintiff"; dismissing claim because defendant "neither contacted, nor directed any actions, toward those third parties" whose business allegedly was interfered with).

B.    No Causation

For the same reason, the FAC fails to plead the Messrs. Maisonrouge and Simon caused injury to Equilibre. To plead tortious interference with business relations, a plaintiff must allege that "'the wrongful acts were the *proximate cause* of the rejection of the plaintiff's proposed

- 16 -

contractual relations.'" *Valley Lane Indus. Co.*, 455 F. App'x at 107 (citation omitted); *see also Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009) ("Tortious interference with prospective economic relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct.") (citing *Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265, 266 (1st Dep't 2002)).

The FAC's threadbare assertion that Messrs. Maisonrouge and Simon "caused the loss of [] capital raising opportunities" from Equilibre investors is not backed by any facts. Nor could it ever be. As demonstrated above, the FAC does not plead a single instance in which Messrs. Maisonrouge and Simon contacted ARE or any other Equilibre investors, let alone convinced them not to invest in or support Equilibre. *See Oxyn Telecomms., Inc.*, 2003 WL 22271224, at *6 (dismissing tortious interference claim; because complaint did not allege that defendant directly contacted potential investors, the evidence "was far too vague and speculative" to conclude that investors would have invested but for defendant's actions); *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 851 (S.D.N.Y. 2000) (dismissing tortious interference counterclaim; defendant "does not allege any facts indicating that plaintiffs had any contact with [third party] Landoll, interfered with her relations with Landoll, or that but for plaintiffs' conduct she would have entered into or extended a contractual relationship with [Landoll]"), *other holding abrogated on other grounds by*, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003); *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 475 (S.D.N.Y. 2021) ("Vague allegations about 'potential investors' does not suffice").

C.    No Wrongful Means

Even if the Trustee could somehow fill these dispositive legal holes, the FAC still does not state a tortious interference claim: the FAC does not identify any "wrongful purpose" or "improper means."

- 17 -

To plead this element, a plaintiff must ordinarily establish that "'the defendant's conduct [] amount[ed] to a crime or an independent tort.'" *Valley Lane Indus. Co.*, 455 F. App'x at 105-06 (citation omitted) (explaining that lawful conduct is generally insufficient to satisfy the wrongful means element; dismissing tortious interference claim when plaintiff did not adequately plead misappropriation of proprietary information or fraud as the basis for the wrongful means element). As to this element, the FAC rests on a conclusory allegation that Messrs. Maisonrouge and Simon defamed Equilibre. (FAC ¶ 154). However, and in a fatal omission, the FAC does not plead specific facts amounting to defamation. A defamation claim must allege "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *SparBar Ltd. v. Lam*, 2024 WL 5696616, at *2 (E.D.N.Y. Jan. 26, 2024) (citing *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)). These elements—every one of them—are missing from the Trustee's pleading.

*First*, the FAC does not plead falsity. The FAC alleges that Messrs. Maisonrouge and Simon stated that Equilibre was "being 'mismanaged'" and "intended on defaulting on $3.6 million in debt." (FAC ¶ 60). In a striking omission, the FAC nowhere alleges that—or how—these statements were false. *See SparBar*, 2024 WL 5696616 at *2 ("With respect to falsity, Plaintiffs have the burden of specifically identif[ying] the statements they allege are false," and must "articulat[e] with specificity how those statements are false") (internal quotations omitted); *LaNasa v. Stiene*, 731 F. Supp. 3d 403, 419 (E.D.N.Y. 2024) (dismissing defamation claim; amended complaint "list[s] a litany of example[] [statements] without any detail explaining *how* those statements are false"), *aff'd*, 2025 WL 893456 (2d Cir. Mar. 24, 2025)).

*Second*, the "publication" element requires that a plaintiff affirmatively plead publication "to a third party *without authorization or privilege*." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329-30 (S.D.N.Y. 2010) (emphasis added) ("New York recognizes a qualified common interest privilege when the allegedly defamatory statement is made between persons who share a common interest in the subject matter); *Boehner v. Heise*, 734 F. Supp. 2d 389, 399-400 (S.D.N.Y. 2010) ("Qualified privilege is liberally applied, as courts typically recognize one when the parties have such a relation to each other as would support a reasonable ground for supposing an innocent motive for imparting the information.") (internal quotations and citation omitted). Messrs. Maisonrouge and Simon, as Equilibre directors and Equilibre investors themselves, shared with Equilibre investors a common interest in the welfare the Company. The Trustee was thus required to affirmatively plead facts establishing that the common interest privilege did not apply to communications with a fellow investor. *See Erdman v. Victor*, 2021 WL 2481254, at *2-3 (S.D.N.Y. June 17, 2021) (defendant condominium board members shared common interest with condominium unit owners when stating to unit owners that plaintiff stole documents and extorted the condominium). The FAC is missing this allegation, and therefore does not satisfy this element. *Id.* at *2 (dismissing defamation claim; "[i]t is Plaintiff's burden to plead each element of his claim, including the lack of privilege, and the Complaint's failure to meet this burden is reviewable on a motion to dismiss").

*Third*, the FAC does not plead *per se* actionable conduct or special damages. "[T]o be defamatory per se, courts have generally required that the statement concern fraud or lack of creditworthiness, or imply that the business will soon cease to exist." *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 370 (N.D.N.Y. 2021) (citation omitted). Statements that Equilibre was "mismanaged," (FAC ¶ 60), do not "impugn [Equilibre's] integrity or competence with

allegations of fraud or lack of creditworthiness," and "[a]t best . . . can be read as comments on [Equilibre's] ability to make a profit and provide stability." *Id*. at 371 (statements that "plaintiff's business operations were not stable" and "that it was unlikely to be able to continue in business" insufficient to support defamation *per se*). And having failed to plead a *per se* defamatory statement, the Trustee was required to but did not plead special damages. Save for a vague and conclusory allegation that Messrs. Maisonrouge and Simon "caused the loss of [] capital raising opportunities," the FAC does not offer any particulars, such as the "who," "what," or "when" of these "opportunities." FAC ¶ 153. *See also Williams v. Buffalo Pub. Schs.*, 758 F. App'x 59, 65 (2d Cir. 2018) (plaintiff must "identify the 'particular' words underlying" the defamation claim and "the complaint also must specify the 'time, manner and persons to whom the publications were made'") (citation omitted).

*Fourth*, the FAC does not allege that the defendants' statements were made with the requisite level of fault—at minimum, that Messrs. Maisonrouge or Simon acted negligently with respect to the truth of any statements. In fact, the alleged statement that Equilibre was "being 'mismanaged'" (FAC ¶ 60), amounts to no more than an expression of opinion about Equilibre. *See Medcalf v. Walsh*, 938 F. Supp. 2d 478, 486 (S.D.N.Y. 2013) (explaining the applicable level of fault for defamation to a limited audience is negligence or gross negligence; also dismissing defamation claim because a "statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts is protected as a statement of opinion") (internal quotations and citation omitted).

\* \* \*

Because the FAC does not properly plead any of the elements of tortious interference, this claim—like the rest of the Trustee's claims—cannot stand. *See SparBar Ltd.*, 2024 WL 5696616,

at *4 (dismissing claim for tortious interference with economic advantage where underlying defamation claim was not adequately pleaded).

## V.      THE COURT SHOULD DENY LEAVE TO REPLEAD

The Trustee has twice attempted—and failed—to come close to stating a claim against Messrs. Maisonrouge and Simon.  The Court should now dismiss with prejudice and without leave to replead.

The pleading defects cited above are not isolated or technical.  Rather, they permeate the entire FAC—just as they permeated the Trustee's original complaint, which the Trustee effectively withdrew.  Given this sorry pleading history, Equilibre will never be able to state a claim against Messrs. Maisonrouge and Simon, and therefore leave to amend should be denied.  *See Friedman v. Endo Int'l PLC*, 2018 WL 446189, at *7 (S.D.N.Y. Jan. 16, 2018) (leave to amend denied; "amendment [] would likely be futile" and "Plaintiffs have not 'given any indication that [they are] in possession of facts that would cure the problems identified in this opinion'") (citation omitted), *aff'd*, 771 F. App'x 494 (2d Cir. 2019).

Courts routinely dismiss with prejudice when as here a second pleading does not address or cure the deficiencies already identified in the first complaint.  *See Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*, 2013 WL 12618658, at *8 (S.D.N.Y. Oct. 22, 2013) (dismissing amended complaint with prejudice; plaintiff "amended his complaint after Defendant filed its first motion to dismiss, which pointed out the deficiencies that plague Plaintiff's retaliation claims," and "[s]till, Plaintiff failed to correct those deficiencies"), *opinion clarified*, 2014 WL 13111005 (S.D.N.Y. Feb. 3, 2014); *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 745 n.5 (S.D.N.Y. 2012) ("The plaintiffs filed an amended complaint after the first motion to dismiss was filed. Because the plaintiffs have failed to state a claim after two opportunities to do so, the Complaint is dismissed with prejudice."), *aff'd*, 505 F. App'x 45 (2d Cir. 2012); *In re M. Fabrikant & Sons,*

*Inc.*, 447 B.R. 170, 197 (Bankr. S.D.N.Y. 2011) (granting dismissal with prejudice; "[A] Court may deny leave to replead where it has previously identified the deficiencies in a pleading, but the deficiencies persist in subsequent pleadings."), *aff'd*, 480 B.R. 480 (S.D.N.Y. 2012), *aff'd*, 541 F. App'x 55 (2d Cir. 2013).

Finally, the Court should not reward the Trustee's conduct in purporting to quote an email that he does not even have, and falsely suggesting that the email was sent to an Equilibre investor when the Trustee knew all along that it was not.

In fairness to Messrs. Maisonrouge and Simon, caught up in the Trustee's indiscriminate dragnet of claims, the merry-go-round of pleadings has to stop.

## CONCLUSION

For the reasons set forth here and in the motion to dismiss filed by the Graviton Defendants, the Court should dismiss all claims against Messrs. Maisonrouge and Simon with prejudice and without leave to replead.

Dated: New York, New York
          September 29, 2025

HERBERT SMITH FREEHILLS KRAMER (US) LLP

/s/ *Paul H. Schoeman*
Paul H. Schoeman
Jonathan M. Wagner
Irene Weintraub
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: Paul.Schoeman@hsfkramer.com
          Jonathan.Wagner@hsfkramer.com
          Irene.Weintraub@hsfkramer.com

*Attorneys for Defendants Maisonrouge and Simon*