**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>EQUILIBRE BIOPHARMACEUTICALS CORP.,<br><br>*Debtor.* | |
| GREGORY M. MESSER Solely in His Capacity as Chapter 7 Trustee of the Estate of Equilibre Biopharmaceuticals Corp.,<br><br>*Plaintiff,*<br><br>-against-<br><br>SAMUEL WAKSAL, individually, as the former Chairperson, Chief Executive Officer, and President of Equilibre Biopharmaceuticals Corp. Chairperson, and Chief Executive Officer and President of Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp. (USA), and Graviton Bioscience B.V., FRANCOIS MAISONROUGE, RUI WU, PETER SIMON, GRAVITON BIOSCIENCE CORPORATION, GRAVITON BIOSCIENCE HOLDING CORPORATION, GRAVITON US CORP. (USA), GRAVITON BIOSCIENCE B.V., and BIHUA CHEN,<br><br>*Defendants.* | Bankruptcy Case No.<br>23-12099 (PB)<br><br>Chapter 7<br><br>Adversary Proceeding Case No.<br>25-01087 (PB) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STAY THE ACTION

**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
(212) 344-5400

*Attorneys for Defendants Samuel Waksal,*
*Rui Wu, Graviton Bioscience Corporation,*
*Graviton Bioscience Holding Corporation,*
*Graviton US Corp. (USA), Graviton*
*Bioscience B.V., and Bihua Chen*

September 29, 2025

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................4

    A.  Factual Background ........................................................................4

    B.  This Adversary Proceeding..............................................................7

    C.  The State Court Action ....................................................................8

ARGUMENT ..............................................................................................................8

  I.   EQUILIBRE RELEASED ANY CLAIMS AGAINST WAKSAL FOR
      CONDUCT WHILE HE WAS EMPLOYED BY EQUILIBRE.......................8

  II.  THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE VIABLE
      CLAIMS ........................................................................................10

    A.  Equilibre has not stated a claim for breach of fiduciary duty or aiding and
        abetting a breach of fiduciary duty against Waksal or Wu (Counts 1, 3, 4)...............10

    B.  Equilibre has not stated a claim for negligence *per se* against Waksal
        (Count 2) ......................................................................................12

    C.  Equilibre has not stated a claim for conversion against Graviton or Chen
        (Count 5) ......................................................................................13

    D.  Equilibre has not stated a claim for unjust enrichment against Graviton or
        Chen (Count 6)..............................................................................15

    E.  Equilibre has not stated a claim for tortious interference with prospective
        economic advantage against Waksal (Count 8) ...........................17

    F.  Equilibre has not stated a claim under the Federal Defend Trade Secrets Act
        against Graviton (Count 9)..............................................................19

  III. THE COURT LACKS PERSONAL JURISDICTION OVER GRAVITON BV ............21

  IV. THIS COURT SHOULD STAY FURTHER PROCEEDINGS IN THIS
      MATTER WHILE THE STATE COURT ACTION REMAINS PENDING..................22

CONCLUSION............................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16 Casa Duse, LLC v. Merkin*,
791 F.3d 247 (2d Cir. 2015) ................................................................................................... 18

*Amusement Indus., Inc. v. Stern*,
786 F. Supp. 2d 758 (S.D.N.Y. 2011) .................................................................................... 16

*Bah v. City of New York*,
2014 WL 1760063 (S.D.N.Y. May 1, 2014) ........................................................................... 12

*Bloom v. U.S. Gov't*,
2003 WL 22327163 (S.D.N.Y. Oct. 10, 2003) ....................................................................... 14

*Broidy v. Glob. Risk Advisors LLC*,
2023 WL 6258135 (S.D.N.Y. Sept. 26, 2023) ........................................................................ 21

*Cardoso v. Wells Fargo Bank, N.A.*,
2022 WL 4368109 (S.D.N.Y. Sept. 20, 2022) ........................................................................ 13

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
17 N.Y.3d 269 (2011) ............................................................................................................... 8

*CoraMed USA, LLC v. Alexion Pharms., Inc.*,
695 F. Supp. 3d 251 (E.D.N.Y. 2023) .................................................................................... 18

*Corsello v. Verizon New York, Inc.*,
18 N.Y.3d 777 (2012) ....................................................................................................... 15, 16

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ...................................................................................................... 9

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ............................................................................................................. 21

*DeBlasio v. Merrill Lynch & Co.*,
2009 WL 2242605 (S.D.N.Y. July 27, 2009) ......................................................................... 12

*Diesenhouse v. Soc. Learning & Payments, Inc.*,
2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022) .......................................................................... 10

*Elsevier Inc. v. Dr. Evidence, LLC*,
2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ..................................................................... 19, 20

ii

*Ferring B.V. v. Allergan, Inc.*,
    4 F. Supp. 3d 612 (S.D.N.Y. 2014) ........................................................................ 14

*Garvey v. Face of Beauty LLC*,
    634 F. Supp. 3d 84 (S.D.N.Y. 2022) ................................................................. 10, 20

*Hudson Neurosurgery, PLLC v. UMR, Inc.*,
    2023 WL 6311218 (S.D.N.Y. Sept. 28, 2023) ........................................................ 16

*In re Adelphia Commc'ns Corp.*,
    285 B.R. 127 (Bankr. S.D.N.Y. 2002) .................................................................... 23

*In re Hydrogen, L.L.C.*,
    431 B.R. 337 (Bankr. S.D.N.Y. 2010) .............................................................. 10, 12

*In re Petrie Retail, Inc.*,
    304 F.3d 223 (2d Cir. 2002) .................................................................................... 24

*In re Trinsum Grp., Inc.*,
    466 B.R. 596 (Bankr. S.D.N.Y. 2012) .................................................................... 10

*In re USAA Data Sec. Litig.*,
    621 F. Supp. 3d 454 (S.D.N.Y. 2022) .................................................................... 12

*Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*,
    463 F. Supp. 3d 490 (S.D.N.Y. 2020) .................................................................... 11

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000) .................................................................................... 16

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ............................................................................. 17, 18

*Kumaran v. Northland Energy Trading, LLC*,
    2021 WL 797113 (S.D.N.Y. Feb. 26, 2021) ........................................................... 11

*Laub v. Faessel*,
    297 A.D.2d 28 (1st Dep't 2002) .............................................................................. 11

*Lawrence v. NYC Med. Prac., P.C.*,
    2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019) ................................................... 19, 20

*Lehman Bros. Special Fin. Inc. v. Bank of Am.*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015) .................................................................... 22

*Lia v. Saporito*,
    909 F. Supp. 2d 149 (E.D.N.Y. 2012) .................................................................... 10

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*,
  2021 WL 3541153 (S.D.N.Y. Aug. 11, 2021) ........................................................ 8

*Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc.*,
  2004 WL 2903745 (S.D.N.Y. Dec. 15, 2004) ...................................................... 15

*Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*,
  14 A.D.3d 678 (2d Dep't 2005) ........................................................................... 16

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*,
  714 F.3d 659 (2d Cir. 2013) ................................................................................ 21

*Palin v. New York Times Co.*,
  940 F.3d 804 (2d Cir. 2019) ................................................................................ 18

*Pesserillo v. Nat'l Grid*,
  78 F. Supp. 3d 551 (E.D.N.Y. 2015) ...................................................................... 9

*Reis, Inc. v. Spring11 LLC*,
  2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016) ...................................................... 14

*Requa v. Coopers & Lybrand*,
  303 A.D.2d 159 (1st Dep't 2003) ......................................................................... 13

*Rider v. Uphold HQ Inc.*,
  657 F. Supp. 3d 491 (S.D.N.Y. 2023) ................................................................... 13

*Ritani, LLC v. Aghjayan*,
  970 F. Supp. 2d 232 (S.D.N.Y. 2013) ................................................................... 17

*Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*,
  192 F. Supp. 3d 348 (S.D.N.Y. 2016) ............................................................. 15, 16

*Schwartz v. HSBC Bank USA, N.A.*,
  160 F. Supp. 3d 666 (S.D.N.Y. 2016) ..................................................................... 9

*Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*,
  589 F. Supp. 3d 401 (S.D.N.Y. 2022) ................................................................... 16

*Tasini v. AOL, Inc.*,
  851 F. Supp. 2d 734 (S.D.N.Y. 2012) ..................................................................... 3

*Transaero, Inc. v. Chappell*,
  2014 WL 1783732 (E.D.N.Y. May 6, 2014) ......................................................... 14

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
  592 F. Supp. 3d 146 (S.D.N.Y. 2022) ................................................................... 13

*Zebra Strategies, Inc. v. Gonzalez-Nazario*,
   764 F. Supp. 3d 144 (S.D.N.Y. 2025) ................................................................. 14

*Zirvi v. Flatley*,
   433 F. Supp. 3d 448 (S.D.N.Y. 2020) ................................................................. 14

**Statutes**

28 U.S.C. § 1334(c)(1) ................................................................................................ 24

28 U.S.C. § 1334(c)(2) ................................................................................................ 23

**Rules**

Fed. R. Bankr. P. 5011(c) ............................................................................................. 1

Fed. R. Civ. P. 8 ............................................................................................... 1, 10, 11

Fed. R. Civ. P. 12(b)(2) ................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 14

Fed. R. Civ. P. 12(d) .................................................................................................... 9

Defendants Samuel Waksal, Rui Wu, Graviton Bioscience Corporation, Graviton Bioscience B.V. ("Graviton BV"), Graviton US Corp. (USA), Graviton Bioscience Holding Corporation (all the corporate defendants are collectively referred to as "Graviton"), and Bihua Chen (collectively referred to as the "Defendants") submit this memorandum of law, together with the Declarations of Jolene LaVigne-Albert ("JLA Decl.") and Duncan Rennie ("DR Decl."), in support of their motion to dismiss this adversary proceeding pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) for failure to state a claim and Rule 12(b)(2) for lack of personal jurisdiction in the case of Graviton BV, and for this Court to abstain from further action in this case pending the resolution of the state action captioned *L4 Bio, LLC v. Graviton Bioscience Corp.*, N.Y. Sup. Ct. Index No. 652469/2025 (the "State Court Action").[1]

## PRELIMINARY STATEMENT

Having run itself into bankruptcy, Equilibre Biopharmaceuticals Corp. ("Equilibre") filed this action seeking to blame Defendants for its own failures. But despite taking the opportunity to file an amended complaint in an attempt to correct its previous deficient pleadings, Equilibre's allegations here fail to state viable causes of action.

Graviton and Equilibre were founded by Defendant Samuel Waksal, an internationally recognized leader in the biotechnology industry. Steven Gordon was a senior officer, director, and shareholder of both companies. The breakdown of Waksal and Gordon's relationship ultimately led to Waksal's resignation from Equilibre and Equilibre's bankruptcy. As part of Waksal's separation from Equilibre, Equilibre released him from any and all claims. This release is ground to dismiss much of the First Amended Complaint ("FAC").

---

[1] Defendants bring this motion to dismiss without prejudice to their prior motion to withdraw the reference in this matter. Defendants continue to believe that withdrawal is appropriate but have filed this motion to comply with their obligations under the current case schedule. *See* Fed. R. Bankr. P. 5011(c).

Independent of the release, the Amended Complaint fails to allege facts necessary to state the claims it purports to bring. Underlying nearly every count is the claim that Waksal improperly transferred certain intellectual property ("IP") away from Equilibre and to Graviton. But Equilibre never specifies what IP was allegedly transferred. Equilibre does not even identify a general category of IP. The Amended Complaint is entirely vague as to what is actually at issue here.

The list goes on. Equilibre vaguely asserts that Waksal violated his fiduciary duties to the company by treating an epileptic child with a non-FDA-approved medication. But the Amended Complaint specifies neither when this occurred nor the effects of the treatment on the child. It never says how this alleged conduct harmed Equilibre.

Equilibre attempts to state a claim for negligence *per se* by asserting intentional conduct. But a claim for negligence based on intentional conduct is a contradiction in terms and cannot support a claim. Equilibre's attempt to use a negligence *per se* claim to assert a private right of action under various statutes is a misuse of the claim and merits dismissal.

Equilibre's attempts to allege a claim for conversion and unjust enrichment also fail. Once again, Equilibre has not alleged what IP was converted. And, in any event, IP is generally not amenable to claims for conversion when the rightful owner is not completely deprived of use of the IP. Equilibre makes no claim of such deprivation here. Equilibre's unjust enrichment claim is duplicative of its conversion claim and fails for the same reasons.

Nor has Equilibre stated a claim for tortious interference with prospective economic advantage. Equilibre fails to allege a single prospective investor who was prepared to invest in Equilibre but failed to do so following any action by Defendants. There was no interference here. And, even if there were interference, Equilibre has not alleged that it was achieved through means of criminal or independently tortious conduct, as required to state a claim.

Equilibre's attempt to allege a claim under the Defend Trade Secrets Act (DTSA) fails when Equilibre has not alleged any trade secrets. Equilibre never alleges what information it claims was stolen. Moreover, whatever that IP or confidential information was, Equilibre has made no effort to allege essential elements to show the existence of a trade secret protected by the act, such as the information's value or the ease with which the information could be acquired by outsiders.

Dismissal with prejudice is appropriate here when Equilibre has failed to state a claim even after amending its complaint in response to the Defendants' motion to dismiss. That earlier motion raised the same deficiencies highlighted here. That Equilibre did not correct those deficiencies leads to the inescapable conclusion that it cannot correct them. *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 745 n.5 (S.D.N.Y. 2012). This Court is under no obligation to give Equilibre yet another opportunity to allege deficient claims.

With respect to the new claim for breach of the Graviton–Equilibre Shared Services Agreement (the "SSA"), and to the extent that any other portion of the Amended Complaint survives this motion to dismiss, the Court should abstain and stay further proceedings pending resolution of the State Court Action. Notwithstanding the Trustee's cagy, vague pleading in this case, based on the more specific allegations by Equilbre's successor in interest in the State Court Action, it is clear that both cases turn on who owns the IP for the ROCK2 inhibitors. Graviton concedes that under the SSA, Equilibre always was, and its successor in interest (L4 Bio) is, the sole owner of the ivermectin formulations. But also, under the SSA, Graviton has always been the sole owner of the ROCK2 inhibitors. L4 Bio is the Plaintiff in the State Court Action and in that proceeding it is suing for (a) a declaratory judgment that it is a 50% owner of the Graviton ROCK2 IP based on the demonstrably false allegation that Equilibre is a 50% owner of that asset and (b) to rescind the SSA, the very contract that Equilibre seeks to enforce here. Thus, the State Court

Action will necessarily determine the predicate question underlying most of Equilibre's claims here: ownership of Graviton's ROCK2 IP. A ruling in state court that Equilibre owned no part of that IP will defeat any claim here that Defendants misappropriated this IP. Abstention is necessary to prevent the possibility of reaching conflicting rulings on this central question of state law.

## STATEMENT OF FACTS

For purposes of this motion only, Defendants assume the facts alleged in the First Amended Complaint to be true.

### A.  Factual Background

Equilibre was a biotech company attempting to develop a proprietary formulation of ivermectin to treat seizure disorders like epilepsy. Defendant Waksal was Equilibre's CEO, president, chair of the board, and largest shareholder ((FAC ¶ 1). Waksal was also the chair, CEO and president of Graviton (FAC ¶ 31). Defendant Chen is alleged to have been the chair or a member of Graviton's board of directors during the relevant period (*id.* ¶ 20). Graviton and Equilibre pursued separate lines of research and development under the SSA that specified what IP belonged to which entity. (FAC Ex. A). The SSA expressly and irrevocably divides ownership of IP between the companies based on the subject matter of the IP. Under the SSA, ivermectin-related IP is solely owned by Equilibre, while ROCK2-related IP is solely owned by Graviton (*id.* § 2.1). The Amended Complaint alleges that Graviton fell short on certain payments due to Equilibre under the SSA for the provision of services by Equilibre to Graviton (FAC ¶¶ 85–87).

The Amended Complaint also alleges that Equilibre initiated an investigation in March 2022 into claims of misconduct by Waksal after an employee gave notice of her resignation and made monetary demands against the company for alleged violations of clinical trial protocols and discrimination (*id.* ¶¶ 45–47). According to the Amended Complaint, the investigation discovered that Waksal had imported and administered a non-FDA-approved veterinary drug (ivermectin, the

medication Equilibre was testing in clinical trials) to a child suffering from severe epilepsy (*id.*
¶¶ 48, 52). Defendant Wu, who at the time was Equilibre's senior vice president of preclinical
research, is alleged to have acquired the ivermectin from Colombia and mixed it with other
unapproved ingredients (*id.* ¶¶ 52, 65). The Amended Complaint does not allege when this conduct
was purported to have occurred, the effects of the drug on the child, or any harm that Equilibre
suffered as a result of this alleged conduct.

The Amended Complaint also alleges that the investigation found that Waksal had hired a
no-show employee, leading to payment to resolve an employee whistleblower claim; fostered a
hostile work environment; solicited unblinded data from Equilibre's clinical study trials; and
obstructed the investigation (*id*. ¶¶ 49–51, 53). Waksal is further alleged to have conducted "secret
Board and committee meetings" and overseen the approval of self-dealing vendor contracts (*id.*
¶¶ 77–78). These allegations, too, are devoid of details about the dates of the alleged meetings, the
"material decisions" made, and specific conduct alleged to be at issue.

In May 2022, Waksal resigned from Equilibre (*id*. ¶¶ 53, 54). During the process of
formalizing his separation from Equilibre, Waksal and Equilibre executed a Restrictive Covenant
Waiver Agreement (the "Waiver Agreement") (JLA Decl. Ex. 1). The agreement contained a broad
release provision by which Equilibre released Waksal from "all claims of any kind" that Equilibre
may have against him, "whether known or unknown," through the execution date of the agreement
(*id.* § 3(d)). The Waiver Agreement was executed on October 27, 2022 (*id.* at 5–6).

The Amended Complaint also claims that after his resignation Waksal "with the assistance
of the other Defendants including but not limited to Wu, transferred Equilibre's proprietary
research, technology, and scientific advancements to Graviton" (FAC ¶ 54). This allegedly
included converting Equilibre's "confidential research, pre-clinical data, and intellectual property

for the benefit of Graviton, including by directing the unauthorized access of Equilibre's servers and the removal of Equilibre's name from vendor reports" (*id.* ¶ 73). The Amended Complaint alleges that on June 7, 2022 "Wu sent confidential information and presentations to Waksal who further distributed those materials to Graviton's bankers and investors" (*id.* ¶ 55). It further alleges that in June and July of 2022 Waksal and certain (unnamed) Graviton employees contacted Equilibre's "third-party vendors and scientific researchers" (the Amended Complaint does not specify which ones) to obtain "proprietary, confidential intellectual property and scientific data" (which the Amended Complaint never specifies).

The Amended Complaint never alleges—even in broad terms—what confidential information and IP Equilibre believes was transferred. It does not allege how the IP was accessed and transferred. There is no allegation as to what Graviton did with the IP after receiving it.

Finally, the Amended Complaint alleges that Defendants "diverted investors who were prepared to fund Equilibre toward Graviton" (*id*. ¶ 58). The Amended Complaint does not identify the purported investors, the state of negotiations with Equilibre prior to Defendants' alleged diversion, which Defendants engaged in the diversion, how that diversion was accomplished, or when it occurred. The only "example" the Amended Complaint provides is an email purportedly sent by Waksal and others to Alexandria Real Estate ("ARE"), an existing investor and debt holder (*id.* ¶ 60). The Amended Complaint alleges upon information and belief that "this was done so that this major investor would take steps to remove Equilibre's management team and in turn cover up Defendants Waksal, Maisonroughe [sic] and Simon's improper conduct" (*id.* ¶ 62). The Amended Complaint does not allege that ARE took any action in response to this alleged email. The Amended Complaint also alleges that at some unspecified date after his removal from Equilibre, Waksal disparaged Equilibre's senior management to potential investors (*id.* ¶ 80). The Amended

6

Complaint does not specify what Waksal allegedly said, when he said it, to whom he said it, or any effect that the comments had on potential investors.

After Waksal's exit, Equilibre was no longer able to raise the necessary funding to continue its operations (*id*. ¶ 82). Equilibre filed for bankruptcy in December 2023 (ECF No. 1[2]). A few months after the filing, Gordon approached the Bankruptcy Trustee with an offer to purchase, through a new entity called L4 Bio LLC, Equilibre's rights and interests in "any drug development, biotechnology or biopharmaceuticals" for $65,000, implicitly conceding that he was buying only ivermectin which was all but worthless. (ECF No. 48 ¶¶ 8–9; ECF No. 36-1). The Bankruptcy Court approved the sale in August 2024 (ECF No. 46). In the State Court Action, L4 Bio now claims that it also purchased a 50% interest stake in the ROCK2 inhibitor IP, which it claims is worth tens of millions more than the $65,000 it paid in the bankruptcy court (JLA Decl. Ex. 2).

### B. <u>This Adversary Proceeding</u>

Months after the sale, the attorneys representing the Trustee in this action disclosed that L4 Bio had retained it to advance claims regarding the IP that L4 Bio supposedly purchased from the estate (ECF No. 48 ¶ 10). Counsel indicated that while investigating those claims, it discovered potential estate claims and approached the Trustee about bringing those estate claims on his behalf. The Trustee sought leave to appoint counsel for that purpose (*id.* ¶¶ 11, 18).

This Court authorized the Trustee to appoint "special litigation counsel to investigate Estate Claims and if appropriate, pursue those claims to recovery" (ECF No. 51). The next month, counsel filed a complaint initiating this adversary proceeding (ECF No. 52). After Defendants moved to dismiss the original complaint, the Trustee filed the Amended Complaint at issue here.

---

[2] Citations to "ECF" refer to the docket in the underlying bankruptcy proceeding: *In re:Equilibre Biopharmaceuticals Corp.* (Bankr. S.D.N.Y. Case No. 23-12099 (PB)).

### C.  **The State Court Action**

On the same date the original complaint here was filed, L4 Bio, using the same counsel, filed the State Court Action against Graviton seeking a declaratory judgment that, as Equilibre's successor-in-interest, L4 Bio is the co-owner of Graviton's ROCK2 IP. (JLA Decl. Ex. 2).[3]

Graviton has moved to dismiss the State Court Action on the grounds that the SSA assigned to Graviton—not Equilibre/L4 Bio—ownership of the relevant IP, and that such ownership was ratified in numerous subsequent agreements, including the Waiver Agreement (JLA Decl. Exs. 3–7). The state court has scheduled argument on this motion for November 13, with an order expected to follow soon afterward (JLA Decl. ¶ 10). Regardless of the outcome, the disputed ownership of any IP will ultimately be resolved in the State Court Action.

## ARGUMENT

### I.    EQUILIBRE RELEASED ANY CLAIMS AGAINST WAKSAL FOR CONDUCT WHILE HE WAS EMPLOYED BY EQUILIBRE

Any claims against Waksal for conduct prior to October 27, 2022 are barred by the release in the Waiver Agreement. "[A] valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276–77 (2011). Thus, Equilibre cannot assert any claims against Waksal arising from conduct prior to October 27, 2022 (JLA Decl. Ex. 1 § 3(d)). This release encompasses the allegations regarding Waksal's alleged treatment of a child with a non-FDA-approved drug and any alleged discrimination, which necessarily occurred prior to his May 2022 resignation; and any alleged funding or IP that were purportedly diverted from Equilibre prior to October 27, 2022. The release alone is, thus, grounds to dismiss much of the Amended Complaint here.

---

[3] This Court may take judicial notice of the complaint filed in the State Court Action. *See, e.g.*, *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, 2021 WL 3541153, at *4–5 (S.D.N.Y. Aug. 11, 2021).

If Equilibre intends to argue that the Waiver Agreement does not apply here because Equilibre was unaware of certain actions until after the agreement was executed (*see* FAC ¶ 28), that argument fails. The agreement released Waksal from all claims by Equilibre "whether known or unknown," through the agreement's execution date (JLA Decl. Ex. 1 § 3(d)).

Equilibre's omission of the Waiver Agreement from its Amended Complaint is no impediment to considering it here. This is a document that Equilibre "had either in its possession or had knowledge of and upon which [it] relied in bringing suit." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). The Amended Complaint includes repeated discussions of Waksal, his resignation, and the events leading up to it (*see* FAC ¶¶ 3–4, 44–47, 53–54). Thus, the agreement effectuating Wakal's separation from Equilibre is integral to the complaint and should be considered. *Cortec Indus.*, 949 F.2d at 48.

Equilibre's "failure to include matters of which as pleader [it] had notice and which were integral to [its] claim—and that [it] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion." *Pesserillo v. Nat'l Grid*, 78 F. Supp. 3d 551, 554 (E.D.N.Y. 2015) (cleaned up). Despite Equilibre's "deliberate decision to omit any reference to" the Waiver Agreement from the Amended Complaint, this Court should "deem[] the Agreement incorporated into the Complaint by reference, particularly since it is integral to [Equilibre's] ability to pursue" its claims. *Id.* at 554–55.[4]

---

[4] In the event the Court does not agree that the Waiver Agreement is integral to the Amended Complaint, the Court should convert this portion of the motion to one for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure and require Equilibre to address the issue in opposition. *See Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 672 (S.D.N.Y. 2016). This agreement is dispositive for the bulk of Equilibre's allegations and should be decided at the earliest available opportunity.

## II.    THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE VIABLE CLAIMS

### A. Equilibre has not stated a claim for breach of fiduciary duty or aiding and abetting a breach of fiduciary duty against Waksal or Wu (Counts 1, 3, 4)

Equilibre fails to state any claim against Waksal or Wu arising from a breach of their fiduciary duties. The Complaint alleges that Waksal and Wu breached their fiduciary duties to the company and that Wu also aided and abetted further breaches of fiduciary duty. Those breaches are alleged to include administering a non-FDA-approved drug to a child, diverting resources from Equilibre, and misappropriating Equilibre's IP (FAC ¶¶ 90–92). But these claims are doomed by Equilibre's failure to allege any specific facts that render those claims plausible.

To survive a motion to dismiss, Equilibre was required to plead its breach of fiduciary duty claim "with particularity." *In re Trinsum Grp., Inc.*, 466 B.R. 596, 618 (Bankr. S.D.N.Y. 2012); *Lia v. Saporito*, 909 F. Supp. 2d 149, 170 (E.D.N.Y. 2012). A complaint without "underlying facts as to when, who, or how, falls short of the facts needed to plead a plausible breach of fiduciary duty claim." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 93 (S.D.N.Y. 2022) (adopting R&R). "Vague and general allegations" that do not contain the "circumstances, occurrences, and events required to be alleged under Federal Rule of Civil Procedure 8(a)" must be dismissed. *In re Hydrogen, L.L.C.*, 431 B.R. 337, 348 (Bankr. S.D.N.Y. 2010).

Vague and general allegations are all that Equilibre offers here. It claims that Waksal and Wu breached their fiduciary duties to the company by treating the child of an employee with a non-FDA-approved drug. The Amended Complaint does not allege when this conduct was purported to have occurred, making it impossible to know if the allegations are even timely.[5] Equilibre also entirely fails to allege how it was harmed by the alleged conduct. But to bring a

---

[5] The statute of limitations in New York for a breach of fiduciary duty claim seeking money damages is three years. *Diesenhouse v. Soc. Learning & Payments, Inc.*, 2022 WL 3100562, at *9 (S.D.N.Y. Aug. 3, 2022).

viable claim for breach of fiduciary duty, Equilibre was required to plead that the misconduct alleged was "the direct and proximate cause of the losses claimed." *Laub v. Faessel*, 297 A.D.2d 28, 30 (1st Dep't 2002). Equilibre does not even try.

Equilibre's allegations regarding the purported misappropriation of IP are also alleged too abstractly to support a claim. To satisfy Rule 8's pleading requirements, Equilibre was required to plead "in at least some identifying detail, the trade secret [Waksal] is alleged to have misappropriated." *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020). But when the "allegedly stolen trade secrets" are identified "only in the broadest terms," the "extremely general description is not adequate to put Defendants on notice" of the materials at issue and the claim must be dismissed. *Id.*; *accord Kumaran v. Northland Energy Trading, LLC*, 2021 WL 797113, at *11 (S.D.N.Y. Feb. 26, 2021).

Here, the Amended Complaint never provides a description of the IP alleged to have been misappropriated. For instance, the Amended Complaint alleges that on June 7, 2022, Wu sent "confidential information and presentations" to Waksal, who further distributed those materials (FAC ¶ 55). But that description provides no indication as to what Equilibre is alleging was misappropriated. This is insufficient to state a claim. Similarly, there is no merit to the attempt to impute liability to Waksal based on allegations that in May 2025 Dr. Libor Velisek—a third party hired by Equilibre—sought Waksal's input on confidential data (*id.* ¶ 57). Passing over the lack of specificity regarding the confidential data at issue, there is no allegation that Waksal invited or responded to this consultation. To the contrary, it appears from the allegation that Dr. Velisek sought out Waksal. It is unclear how this allegation—regarding conduct three years after Waksal's resignation from Equilibre—could constitute a breach of fiduciary duty by Waksal or the harm that occurred from the communication.

11

Equilibre's attempt to assert a claim against Wu for aiding and abetting a breach of fiduciary duty also fails. Equilibre cannot state a claim for aiding and abetting a breach of fiduciary duty when it has failed to state a claim for the primary breach. *In re Hydrogen, L.L.C.*, 431 B.R. at 352; *DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605, at *27 (S.D.N.Y. July 27, 2009).

### B. **Equilibre has not stated a claim for negligence *per se* against Waksal (Count 2)**

Equilibre's allegations regarding negligence *per se* reflect a profound misunderstanding of the claim. The Amended Complaint lists a dozen statutes under state and federal law (FAC ¶¶ 99–110) before alleging that Waksal's conduct in purportedly treating a child with a non-FDA-approved medication and misappropriation of Equilibre's IP violated "some" of these statutes (*id.* ¶ 112). The Amended Complaint also alleges Waksal was negligent because he purportedly misappropriated IP in violation of three federal statutes (*id.* ¶¶ 113, 116–17).

To start, Equilibre's negligence *per se* allegations fail because "[u]nder New York law, harm predicated on an intentional act may not give rise to a claim of negligence." *Bah v. City of New York*, 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014). Thus, "when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed." *Id.* Here, Equilibre alleges that Waksal "imported, distributed, administered, and prescribed veterinary medication to a child outside of approved protocols, and without FDA authorization" and "converted much of Equilibre's valuable proprietary research, patents, technology, and scientific advancements" (FAC ¶¶ 112–13). These allegations of intentional conduct cannot give rise to a negligence claim.

Equilibre is attempting to bring a private cause of action under various statutes that do not otherwise allow for it. But the statutory creation of a private right of action "is a prerequisite to asserting a claim for negligence *per se* under New York law." *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 471 n.7 (S.D.N.Y. 2022). Most of the statutes on which Equilibre bases its claim do

12

not create private rights of action. *See, e.g.*, *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp.

3d 146, 155 (S.D.N.Y. 2022) (holding the FDCA does not create a private right of action); *Requa*

*v. Coopers & Lybrand*, 303 A.D.2d 159 (1st Dep't 2003) (holding that New York's Education Law

regarding regulation of the admission to and practice of certain professions does not provide a

private right of action). Affording a private right of action for a statute that does not recognize one

would "contravene[e] the legislative scheme." *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 503

(S.D.N.Y. 2023). This is inappropriate and merits dismissal. *Id.*

Even if Equilibre's negligence *per se* allegations were cognizable, they are too conclusory

to allege a viable claim. Simply giving a broad description of conduct and claiming that it violates

a statute (FAC ¶¶ 99–117) does not state a claim for negligence *per se*. *Cardoso v. Wells Fargo*

*Bank, N.A.*, 2022 WL 4368109, at *6 (S.D.N.Y. Sept. 20, 2022).

The vagueness is further highlighted by the fact that even Equilibre is unsure of what

statutes it believes Waksal violated. Equilibre alleges that Waksal's conduct violated "some" of

the more than dozen statutes and regulations Equilibre lists in the Amended Complaint (FAC

¶ 112). By acknowledging that only some of the listed statutes may have been violated, Equilibre

effectively admits that it cannot specify its own allegations.

### C. Equilibre has not stated a claim for conversion against Graviton or Chen (Count 5)

Equilibre's attempt to state a conversion claim against Graviton and Chen fails on multiple

fronts. The Amended Complaint alleges that Waksal "improperly took possession of Equilibre's

intellectual property and held it out to be the sole and exclusive property of Graviton" (FAC ¶ 135).

Chen, in turn, is alleged to have "failed to exercise discretion and control to prevent the unlawful

conversion of Equilibre's intellectual property" (*id.* ¶ 136).

To start, Equilibre's conversion claim is alleged in too conclusory a manner to support a claim. As described above, the Amended Complaint fails to give any details as to what IP Equilibre believes was converted here. Without any detail to suggest what, when, or how the conversion is supposed to have occurred, the Amended Complaint presents "precisely the kind of conclusory allegations which are plainly insufficient to prevent a Rule 12(b)(6) dismissal." *Bloom v. U.S. Gov't*, 2003 WL 22327163, at *6 (S.D.N.Y. Oct. 10, 2003) (dismissing claim where the plaintiff failed to "put forth any facts regarding who took the information from him or how and when they did so"); *accord Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020) (dismissing "vague" allegations concerning misappropriation of trade secrets that did not apprise the defendants or the court with "sufficient particularity" of what was purported to have been taken).

In any event, Equilibre's conversion claim fails to allege that it was prevented from exercising control over the IP it claims was misappropriated. "While New York courts have recognized that conversion can be predicated on the loss of intangible electronic data," a conversion claim still requires "the exercise of unauthorized dominion and control *to the complete exclusion of the rightful possessor*." *Reis, Inc. v. Spring11 LLC*, 2016 WL 5390896, at *10 (S.D.N.Y. Sept. 26, 2016) (emphasis added). When, as here, a complaint does not show that the plaintiff was "deprived of the use" of the allegedly converted property, that complaint "does not state a conversion claim." *Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 160–61 (S.D.N.Y. 2025).

These principles explain why courts generally find that IP such as trade secrets and other confidential, proprietary, and privileged information "are not amenable to claims for conversion." *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 630–31 (S.D.N.Y. 2014); *Transaero, Inc. v. Chappell*, 2014 WL 1783732, at *11 (E.D.N.Y. May 6, 2014). Even if Graviton had

14

misappropriated Equilibre's IP, Equilibre was not excluded from using it. Equilibre claims in conclusory fashion that Graviton's actions "derogated Equilibre's possessory rights of that intellectual property" (FAC ¶ 134). But nowhere does the Amended Complaint allege that Equilibre was completely excluded from making use of its purported IP. This is fatal to its claim.

Moreover, the conversion claim against Chen fails to allege any wrongdoing on her part. The allegations amount to no more than the fact that Chen was the chair of Graviton's board of directors and should have stopped Waksal from converting Equilibre's IP (FAC ¶¶ 6, 83–84, 136, 138). But an "officer or director is not liable merely because of her office for the torts of other officers." *Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc*., 2004 WL 2903745, at *3 (S.D.N.Y. Dec. 15, 2004), *as corrected* (Jan. 5, 2005). The Amended Complaint never alleges any direct wrongdoing on Chen's part. She is apparently being sued solely because of her position with Graviton. That does not state a cognizable claim for conversion.

### D. Equilibre has not stated a claim for unjust enrichment against Graviton or Chen (Count 6)

Equilibre's unjust enrichment claim fails as an initial matter because it duplicates Equilibre's conversion claim. Under New York law, an "unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). "If the plaintiff is simply restating a contract or tort claim, then unjust enrichment is not available." *Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016).

Equilibre's unjust enrichment claim simply restates its conversion claim. Equilibre is candid about doing so, alleging that "Graviton's taking of and use of Equilibre's intellectual property conferred a measurable benefit upon Graviton and, thereby, Chen" (FAC ¶ 142). Any unjust enrichment here is predicated on Equilibre's conversion claim. If Equilibre's conversion

15

claim succeeds (it should not), "the unjust enrichment claim is duplicative"; and if the conversion claim is defective (it is) "an unjust enrichment claim cannot remedy the defects." *Corsello*, 18 N.Y.3d at 791. Either way, the "unjust enrichment claim should be dismissed." *Id.*

Apart from being duplicative, the Amended Complaint's allegations are too conclusory to state a claim for unjust enrichment. "Vague or general allegations are insufficient to plead a claim for unjust enrichment." *Royal Host Realty*, 192 F. Supp. 3d at 357. The Amended Complaint contains no specific allegations as to how Graviton or Chen have been unjustly enriched.

Alleging only that the defendants "received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment." *Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 680 (2d Dep't 2005). But that is all Equilibre alleges. Courts faced with similarly vague pleadings have consistently dismissed unjust enrichment claims. *See, e.g.*, *Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 589 F. Supp. 3d 401, 421–22 (S.D.N.Y. 2022) (plaintiffs could not "rely on their general theory" that the improper transfer of business assets from one company to another unjustly enriched the defendants "[w]ithout more specific factual allegations"); *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 784 (S.D.N.Y. 2011) (allegation that defendants used the money in a "variety of unauthorized ways" was "too vague and conclusory to constitute a proper allegation" of unjust enrichment).

The allegations against Chen fail for the additional reason that she is not alleged to have received any direct benefit. To survive a motion to dismiss, Equilibre was required to allege a "specific and direct benefit necessary to support an unjust enrichment claim." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Where any benefit is only indirect, the claim must be dismissed. *Hudson Neurosurgery, PLLC v. UMR, Inc.*, 2023 WL 6311218, at *7 (S.D.N.Y. Sept. 28, 2023). Far from alleging that Chen benefitted directly, the Amended Complaint states the opposite.

16

Equilibre alleges that Graviton's alleged conduct "conferred a measurable benefit upon Graviton *and, thereby*, Chen" (FAC ¶ 142 (emphasis added)). Because any benefit to Chen flowed through Graviton—as expressly alleged in the Amended Complaint—Chen did not receive any direct benefit. The claim against her should, therefore, be dismissed.

### E. Equilibre has not stated a claim for tortious interference with prospective economic advantage against Waksal (Count 8)

Equilibre fails to allege the elements of a claim for tortious interference with prospective economic advantage. The claim requires Equilibre to allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006). The Amended Complaint alleges that Defendants diverted investors from Equilibre and, as a purported example, claims that Waksal emailed Alexandria Real Estate ("ARE")—an existing investor and debt holder—to say that Equilibre intended on defaulting on its debt and that Equilibre was being mismanaged (FAC at ¶¶ 58–62).

First, Equilibre fails to allege its business relationship with any purportedly diverted investors. Equilibre was required to, but did not, "plead the basis on which it claims the 'relationship' and the expectation it would yield future business." *Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 261 (S.D.N.Y. 2013). Equilibre cannot meet that standard when it does not even name the purported investors, let alone explain the basis for any expectation of future business. Even Equilibre's reference to ARE does not save its claim because there are no allegations that ARE—already an investor—had plans to make any further investments in Equilibre.

Second, Equilibre does not specifically allege any interference with its business relationships or injury that it suffered as a result. The Amended Complaint does not identify a

17

single relationship that was affected by the Defendants' alleged conduct. The only investor Equilibre names is ARE, but Equilibre never claims that ARE declined to make an investment it would have made but for Defendants' actions. Absent any lost investments, Equilibre has not alleged any interference or harm. This absence is fatal to its claims. *See Kirch*, 449 F.3d at 400.

Third, Equilibre fails to allege that Defendants acted solely out of malice. The Amended Complaint alleges in conclusory fashion that Defendants acted with the sole purpose of harming Equilibre (FAC ¶ 154), while also alleging that Defendants acted to protect themselves from investigation (*id.* ¶ 62). Defendants' alleged actions to promote their own self-interests defeat any claim that the actions were undertaken with the sole purpose of maliciously inflicting injury on Equilibre. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015).

Nor can the Amended Complaint's allegations support the inference that Equilibre used dishonest, unfair, or improper means to interfere with Equilibre's business opportunities. Again, no actual interference is alleged here at all. But, even if it had been, to succeed on this claim Equilibre must allege that Defendant's conduct amounted to a crime or independent tort. *Id.* It has not done so. Equilibre suggests that Defendants may have made defamatory statements (FAC ¶ 154), but has not alleged that the Defendants' comments were false or caused Equilibre to suffer any special damages. *See Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (identifying elements of defamation under New York law).[6] The failure to plead a viable defamation claim defeats Equilibre's attempt to base a claim for tortious interference with prospective economic advantage on any alleged defamation. *See CoraMed USA, LLC v. Alexion Pharms., Inc.*, 695 F. Supp. 3d 251, 269 (E.D.N.Y. 2023).

---

[6] In fact, the Amended Complaint fails to allege any of the elements of a defamation claim. *See* Maisonrouge and Simon Motion to Dismiss at Section IV(c). Defendants adopt the arguments raised by co-defendants Maisonrouge and Simon regarding the deficiencies of the Amended Complaint's defamation allegations.

**F. Equilibre has not stated a claim under the Federal Defend Trade Secrets Act against Graviton (Count 9)**

Equilibre's attempt to plead a claim under the Defend Trade Secrets Act ("DTSA") fares no better than its other claims and should be dismissed. Equilibre returns to its allegations that Graviton misappropriated Equilibre's IP and then recites the elements of a trade secret as defined in the statute (FAC ¶¶ 156–67). Because the allegations of misappropriating IP are alleged only abstractly (as discussed above), the claim fails.

Equilibre's conclusory allegations that Graviton misappropriated IP are insufficient to state a claim. Although Equilibre was not required to "plead the trade secret with specificity in the complaint," it still "must do more than simply list general categories of information." *Elsevier Inc. v. Dr. Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018); *accord Lawrence v. NYC Med. Prac., P.C.*, 2019 WL 4194576, at *5 (S.D.N.Y. Sept. 3, 2019). Were the rule otherwise, "any claimant could survive a motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret." *Elsevier Inc.*, 2018 WL 557906, at *6.

The Amended Complaint here never details the IP Equilibre believes was stolen. The Amended Complaint refers to "proprietary research, technology, and scientific advancements" (FAC ¶ 54); "confidential information" (*id.* ¶ 55); "confidential intellectual property and scientific data" (*id.* ¶ 56); and "confidential research, pre-clinical data, and intellectual property" (*id.* ¶ 73). These allegations are even more abstract than other cases where courts have dismissed the pleadings as insufficient. *See Elsevier Inc.*, 2018 WL 557906, at *5–6 (dismissing complaint that alleged theft of, among of things, "clinical methods relating to executing projects," "data configuration protocols and methods," "assessments of the risk of bias of the evidence based on the funding source," and "analytics, analytics tools, and analytics programming"); *Lawrence*, 2019 WL 4194576, at *5 (complaint insufficiently specific when it alleged theft of trade secrets relating

19

to "the methods for advertising and communicating with prospective patients" and "patient coordination and signing up patients"). If Equilibre's conclusory allegations—which are less specific than those rejected in *Elsevier* and *Lawrence*—are sufficient to survive a motion to dismiss, it is hard to image what pleading would not suffice.

Not only has Equilibre failed to specify the trade secrets it claims were misappropriated, it has not alleged the existence of any trade secrets at all. Throughout Equilibre's pleadings, it "conflates the concept of a 'trade secret' with 'confidential information,'" but "alleging that a trade secret exists requires much more specificity." *Elsevier Inc.*, 2018 WL 557906, at *6. The DTSA "requires that before information or processes may be accorded trade secret status, it must be shown that it is truly a trade secret—a standard far greater than the standard for confidentiality of business information." *Id.* at *5. To establish the existence of a trade secret, Equilibre was required to allege "the information's value, the extent to which it is known by those within and outside of the business, the amount of effort or money spent to develop the information, and the ease with which the information could be acquired or developed by outsiders." *Lawrence*, 2019 WL 4194576, at *5; *accord Garvey*, 634 F. Supp. 3d at 96. Because Equilibre alleges none of this information, its DTSA claim fails.

Even if Equilibre had alleged the existence of a trade secret here, the DTSA claim still fails because Equilibre cannot allege any wrongful misappropriation. There are two fields of IP potentially at issue here: ROCK2 inhibitors and ivermectin. But the SSA—which Equilibre attached as an exhibit to its Amended Complaint—grants Graviton ownership over the ROCK2 IP and a license to use Equilibre's ivermectin IP in Graviton's own work (FAC Ex. A §§ 2.1, 2.3(b)(ii)). There can be no dispute on this. Equilibre's claim of trade secret theft necessarily fails where Graviton, by contract, either owned the IP at issue or had a license to use that IP.

Equilibre's formulaic recitation of the elements under the DTSA is not enough to save its claim (*see* FAC ¶¶ 156–67). Simply "recit[ing] the exact language" of the statute "is precisely the kind of generic allegation that courts hold insufficient." *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 6258135, at *11 (S.D.N.Y. Sept. 26, 2023). Equilibre offers nothing more.

### III.        THE COURT LACKS PERSONAL JURISDICTION OVER GRAVITON BV

Independent of the deficiencies set out above, this Court lacks personal jurisdiction over defendant Graviton BV, which is a foreign entity not doing business in this country.[7] To survive a motion under Rule 12(b)(2), Equilibre must make a prima facie showing that jurisdiction exists. *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 673 (2d Cir. 2013). This "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* Equilibre has not—and cannot—do so.

Equilibre cannot show that the Court has general jurisdiction over Graviton BV. To establish general jurisdiction, the corporation's "affiliations with the State" must be "so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (cleaned up). But, as the Amended Complaint alleges, Graviton BV is "organized and existing under and pursuant to the laws of the Netherlands" (FAC ¶ 16). The truth goes even further. Graviton BV has "no offices, employees, or property in the United States; is not registered to conduct business in the United States; and does not advertise, solicit or conduct any business in the United States" (DR Decl. ¶ 5). The company does not receive revenue from the United States (*id.*). General jurisdiction does not exist over Graviton BV.

---

[7] Although Graviton BV accepted service of process of the Adversary Complaint through undersigned counsel, *see* ECF No. 11, it did so without consenting to personal jurisdiction.

Equilibre also cannot establish specific jurisdiction. When Graviton BV has effectively no involvement with business in the United States, it did not "purposefully avail" itself of the benefits and protections of U.S. law, and, therefore, this Court lacks personal jurisdiction over it. *Lehman Bros. Special Fin. Inc. v. Bank of Am.*, 535 B.R. 608, 622 (Bankr. S.D.N.Y. 2015).

### IV.    THIS COURT SHOULD STAY FURTHER PROCEEDINGS IN THIS MATTER WHILE THE STATE COURT ACTION REMAINS PENDING

With respect to the new breach of contract claim and to the extent that any other portion of the Amended Complaint survives this motion to dismiss, the Court should abstain and stay further proceedings pending resolution of the State Court Action. Resolution of the claims there will necessarily affect the viability of any remaining claims here.

Concurrent litigation presents the clear risk of different courts issuing inconsistent rulings. In this Court, Equilibre asserts a breach of contract claim under the SSA (FAC ¶¶ 146–48). But in the State Court Action, Equilibre's successor-in-interest (represented by the same counsel) seeks to rescind the SSA (FAC ¶ 5 n.1; JLA Decl. Ex. 6 at 15–16). Proceeding with Equilibre's contract claim here while the State Court Action remains pending means that Graviton will have to litigate against a claim by Equilibre for damages arising from the purported breach of a contract that may be held in the State Court Action to have been rescinded.

Moreover, nearly all the Amended Complaint's claims depend on the allegation that Defendants misappropriated Equilibre's IP. But the extent to which Equilibre owned any of that IP in the first place will be resolved in the State Court Action. There, Equilibre's successor-in-interest (L4 Bio) seeks a declaratory judgment that it is the co-owner of Graviton's ROCK2 IP (JLA Decl. Ex. 2). Determination of L4 Bio's ownership rights turns on Equilibre's rights because it is only through Equilibre that L4 Bio obtained any ownership interest. Here, Equilibre's claims regarding the alleged misappropriation of IP requires, as a threshold matter, a showing that

Equilibre had an interest in the IP. If Equilibre lacks rights to Graviton's ROCK2 IP, there is nothing to have been converted and any "transfer" of the ROCK2 IP could not have constituted a breach of fiduciary duty or any other tort.

There is no dispute that Equilibre's ivermectin formulations were worthless—sold for a mere $65,000. The true battle, as defined by the state court complaint, is who owns Graviton's ROCK2 inhibitor IP, which L4Bio claims is worth tens of millions of dollars. Necessarily, this lawsuit too is not about the valueless ivermectin but about the highly valuable ROCK 2 inhibitors.

Thus, the predicate for the bulk of the claims here—whether, as a matter of state contract law, Equilibre had any ownership interest in IP that Graviton has used or asserted control over—will be determined in the State Court Action.

Given the overlap between this action and the State Court Action, this Court should abstain. By statute, a court "shall abstain from hearing" a proceeding "based upon a State law claim or State law cause of action" that is related to a bankruptcy case but does not arise under title 11 "if an action is commenced and can be timely adjudicated in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). This mandatory abstention is appropriate when "(1) the abstention motion was timely brought; (2) the action is based upon a state law claim; (3) the action is related to a bankruptcy proceeding, as opposed to arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code; (4) the sole federal jurisdiction for the action is Section 1334; (5) there is an action commenced in state court; and (6) the action is capable of being timely adjudicated in state court." *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002).

There can be no question that the criteria for abstention are satisfied here. The motion is timely when it is part of Defendants' first responsive filing to the Amended Complaint. The claims asserted in the Amended Complaint all arise under state law and not the Bankruptcy Code. The

sole basis for jurisdiction asserted in the Amended Complaint is Section 1334 (FAC ¶ 8). The State

Court Action has been filed and litigation is already underway (JLA Decl. ¶¶ 6–10). And, finally,

the State Court Action can be adjudicated in a timely manner. Indeed, the action has been assigned

to the Commercial Division of New York's Supreme Court, where cases move on a fast-track basis

and argument on Graviton's motion to dismiss has been scheduled for November 13, with a

decision expected to follow shortly after that (*id.* ¶ 10). There are no grounds for reasonable dispute

on any of these points.

Even if abstention were not required here, this Court should still exercise its discretion to

abstain from hearing the action "in the interest of justice, or in the interest of comity with State

courts or respect for State law." 28 U.S.C. § 1334(c)(1); *In re Petrie Retail, Inc.*, 304 F.3d 223,

232 (2d Cir. 2002). Such abstention is particularly appropriate when, as here, concurrent state and

federal litigation could reach incompatible results.

At bottom, the Amended Complaint here raises state law claims, the predicate for which is

best resolved in the pending State Court Action. Doing so promotes judicial efficiency, eliminates

the possibility of courts reaching different conclusions on the same issue, and allows the New York

State courts to resolve the central question of state law in the first instance.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss counts 1, 2, 3, 4, 5, 6, 8, and 9 of Plaintiffs' First Amended Complaint with prejudice, and stay further proceedings in this matter pending the resolution of the State Court Action.

Dated: New York, New York
      September 29, 2025

Respectfully submitted,

**SCHLAM STONE & DOLAN LLP**

By:    */s/ Jeffrey M. Eilender*
Jeffrey M. Eilender
Jolene LaVigne-Albert
Joshua Kahane
John Moore
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212) 344-5400
Email: jeilender@schlamstone.com
Email: jlavignealbert@schlamstone.com
Email: jkahane@schlamstone.com
Email: jmoore@schlamstone.com

*Attorneys for Defendants Samuel Waksal, Rui Wu, Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp. (USA), Graviton Bioscience B.V., and Bihua Chen*